EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Héctor J. Martínez Maldonado<br><br>Recurrido<br><br>v.<br><br>Consejo de Seguridad y Recreación de Urbanización Villamar Este, Inc. (CONSERVE)<br><br>Peticionario | Certiorari<br><br>2024 TSPR 125<br><br>214 DPR ___ |

Número del Caso: CC-2023-0536

Fecha: 3 de diciembre de 2024

Tribunal de Apelaciones:

    Panel VIII

Representante legal de la parte peticionaria:

    Lcdo. Alberto Aresti Franceschini

Representante legal de la parte recurrida:

    Lcdo. Miguel A. Negrón Matta

Materia: Código Municipal de Puerto Rico – Facultad del Consejo, Junta o Asociación de Residentes de una urbanización con control de acceso para establecer una partida no recurrente o cuota especial para gastos legales en la medida en que esta sea necesaria y cumpla con los requisitos y procesos de votación adoptados por los miembros.

Este documento está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal Supremo. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Héctor J. Martínez Maldonado<br><br>Recurrido<br><br>v.<br><br>Consejo de Seguridad y Recreación de Urbanización Villamar Este, Inc. (CONSERVE)<br><br>Peticionario | CC-2023-536 | *Certiorari* |

El Juez Asociado Señor Feliberti Cintrón emitió la Opinión del Tribunal.

En San Juan, Puerto Rico, a 3 de diciembre de 2024.

En esta ocasión tenemos la oportunidad de pautar si un Consejo, Junta o Asociación de Residentes de una urbanización con control de acceso debidamente constituido por ley puede establecer una partida no recurrente o cuota especial para sufragar el pago de honorarios de abogado y gastos legales sin contar con el voto unánime de sus miembros.

Por los fundamentos que expondremos, **adelantamos que**, a menos que se disponga lo contrario por ley o reglamento, **sí puede**. Veamos.

I

El 6 de julio de 2022, el Sr. Héctor J. Martínez Maldonado (señor Martínez Maldonado o recurrido) presentó una demanda sobre sentencia declaratoria en contra del

Consejo de Seguridad y Recreación de la Urbanización Villamar Este, Inc. (CONSERVE o Asociación de Residentes).[1]

En síntesis, el recurrido alegó que la Asociación de Residentes impuso el pago de una "derrama"[2] para honorarios de abogado y gastos legales sin tener facultad para ello y sin contar con los votos suficientes.[3] Según razonó el señor Martínez Maldonado, CONSERVE sólo podía proponer el pago de una aportación voluntaria, sujeta al criterio de cada propietario, debido a que no existe relación entre la finalidad para la que fue creada la Asociación de Residentes y la imposición de una "derrama" ilegal para honorarios de abogado y gastos legales.[4] Consistente con

---

[1] La Urbanización Villamar Este (Urbanización) es una comunidad residencial con control de acceso que consta de ciento cuatro (104) unidades. *Reglamento de la Asociación del Consejo de Seguridad y Recreación Villamar Este* (Reglamento de la Asociación de Residentes), Apéndice del *certiorari*, pág. 30.

[2] Aunque las partes y los tribunales inferiores utilizaron el término "derrama", este Tribunal lo que examina es la imposición de una partida no recurrente o especial dentro de la cuota anual que aprobó el Consejo de Seguridad y Recreación de la Urbanización Villamar Este, Inc. (CONSERVE o Asociación de Residentes). Por consiguiente, al aludir al concepto de "derrama" nos referimos más bien a una "partida no recurrente" o "cuota especial".

[3] La Asociación de Residentes convocó su Asamblea Anual de 2021 y estableció una agenda en la que incluyó, entre otros asuntos nuevos, la intención de aprobar una "derrama" para cubrir gastos legales. *Convocatoria a Asamblea Anual 2021*, Apéndice del *certiorari*, pág. 18. La referida Asamblea Anual se celebró el 1 de diciembre de 2021 con un quórum de treinta y cuatro (34) votos. *Minuta*, Apéndice del *certiorari*, pág. 19. En cuanto a la derrama o cuota especial que se aprobó para gastos y honorarios de abogado, la votación fue la siguiente: veintitrés (23) votos a favor; diez (10) votos en contra, y tres (3) abstenciones. Esta partida no recurrente se incluyó en la cuota de mantenimiento de cada propiedad e implicaba el pago total de $150.00, pagaderos en tres (3) plazos durante los meses de enero a marzo de 2022. *Minuta*, Apéndice del *certiorari*, pág. 20.

[4] En su demanda, el Sr. Héctor J. Martínez Maldonado (señor Martínez Maldonado o recurrido) expuso que CONSERVE fue creada en virtud de la Ley Núm. 21 de 20 de mayo de 1987, según enmendada, conocida como Ley de Control de Tráfico de Vehículos de Motor y Uso Público de Ciertas Calles (Ley de Control de Acceso), 23 LPRA ant. seq. 64 *et seq*., con el objetivo de mejorar la calidad de vida de los residentes de la

esto, el recurrido le solicitó al foro primario que dictara una sentencia declaratoria a su favor, declarara que CONSERVE no poseía facultad en ley para imponerle una "derrama" a sus miembros, y le ordenara el pago de los gastos legales incurridos por éste, así como honorarios de abogado por temeridad.

El 22 de agosto de 2022, la Asociación de Residentes presentó su contestación a la demanda. En esencia, sostuvo que la "derrama" impuesta fue aprobada en conformidad con su Reglamento (Reglamento de la Asociación de Residentes), mediante el voto mayoritario de los miembros que asistieron a la Asamblea Anual, para establecer un fondo para litigios.

Tras varios trámites procesales, el 13 de octubre de 2022, CONSERVE presentó una solicitud de sentencia sumaria en la que expuso que la derrama se había aprobado para satisfacer los gastos legales necesarios en los que debía incurrir (tales como reclamaciones extrajudiciales y judiciales en cobro de dinero por cuotas de mantenimiento adeudadas, entre otras) para cumplir con su deber de administración. De ahí que le solicitara al Tribunal de Primera Instancia la ratificación de la partida no recurrente de $150.00 y le ordenara al señor Martínez

---

Urbanización mediante el establecimiento de medidas de seguridad personal y sobre la propiedad, tanto individual como pública, y para promover, dirigir y patrocinar actividades recreativas, deportivas y sociales. *Demanda*, Apéndice del *certiorari*, pág. 15.

Maldonado a cumplir con el pago de ésta, más las costas, gastos y honorarios de abogado por $1,500.

En respuesta, el 2 de noviembre de 2020, el recurrido presentó su oposición a la moción de sentencia sumaria. A su vez, solicitó que se dictara sentencia sumaria a su favor. Fundamentalmente, el señor Martínez Maldonado reafirmó su contención en torno a la ilegalidad de la "derrama" y argumentó que los actos de la Asociación de Residentes atentaban contra su derecho de propiedad.

Luego de la presentación de otros escritos, el 7 de diciembre de 2022, el Tribunal de Primera Instancia emitió una *Sentencia* en la que declaró con lugar la demanda incoada por el señor Martínez Maldonado. En resumen, dispuso que la Asociación de Residentes no tenía facultad en ley para aprobar una "derrama" para gastos legales y, además, había actuado con temeridad al obligar innecesariamente al recurrido a asumir las molestias, gastos, trabajos e inconvenientes del pleito. Por consiguiente, el foro primario ordenó a CONSERVE a pagar $2,500 por concepto de honorarios de abogado por temeridad.[5]

---

[5] El foro primario explicó que emitió su determinación a la luz de las admisiones de CONSERVE, a saber: (1) las servidumbres de equidad que crearon la Urbanización no autorizan la aprobación de "derramas" para gastos legales; (2) el Art. 3.10 de la Ley Núm. 107-2020, según enmendada, conocida como Código Municipal de Puerto Rico (Código Municipal), 31 LPRA sec. 7420, sólo faculta a la Asociación de Residentes a imponer una cuota para cubrir los costos y gastos de instalación, operación y mantenimiento del sistema de control de acceso, y (3) el Reglamento de la Asociación de Residentes sólo autoriza que se cobre una cuota mensual para el mantenimiento de las facilidades del acceso controlado y no una "derrama". *Sentencia del Tribunal de Primera Instancia*, Apéndice del *certiorari*, pág. 227.

Inconforme con la *Sentencia* del Tribunal de Primera Instancia, el 23 de diciembre de 2022 la Asociación de Residentes solicitó la reconsideración del dictamen. Así, y luego de contar con la posición del señor Martínez Maldonado, el foro primario proveyó no ha lugar a la moción de CONSERVE mediante una *Resolución* notificada el 3 de febrero de 2023.

Aún en desacuerdo, el 6 de marzo de 2023, la Asociación de Residentes presentó un recurso de apelación ante el Tribunal de Apelaciones. En su escrito, CONSERVE expuso que el Tribunal de Primera Instancia había errado al proveer no ha lugar a una moción sobre falta de parte indispensable; al determinar que no podía cobrar la cuota especial de $150.00 para gastos legales y al imponerle el pago de honorarios de abogado por $2,500 para una reclamación de $150.00. De esta manera, solicitó que el foro apelativo intermedio revocara la determinación objeto de revisión. El recurrido, por su parte, presentó su alegato en oposición el 5 de abril de 2023. Sostuvo que el foro primario no había cometido los errores señalados por la Asociación de Residentes y solicitó la confirmación del dictamen apelado más la imposición de costas, gastos y honorarios de abogado por una cantidad no menor a $5,000, así como una sanción económica por haberse presentado el recurso de apelación para dilatar los procedimientos.

El 23 de junio de 2023, el Tribunal de Apelaciones emitió una *Sentencia* en la que confirmó lo dispuesto por

el Tribunal de Primera Instancia por fundamentos distintos. Tras estimar que no existían hechos medulares en controversia que impidieran disponer del pleito por la vía sumaria, el foro apelativo intermedio evaluó si el tribunal recurrido aplicó correctamente el derecho. En esa línea, y por entender que la disputa entre las partes giraba en torno al uso de la palabra "derrama", consultó la definición del vocablo en la Real Academia Española. Así las cosas, el Tribunal de Apelaciones expuso que la palabra "derrama" es definida como "el repartimiento de un gasto eventual o una contribución temporal o extraordinaria".

Teniendo en cuenta lo anterior, el foro apelativo intermedio examinó el Código Municipal de Puerto Rico, *infra*, la Escritura Núm. 79 sobre Urbanización, otorgada el 15 de octubre de 1954 (Escritura Núm. 79), y el Reglamento de la Asociación de Residentes. Tras su análisis, concluyó que, a pesar de que la palabra "derrama" no surgía de los documentos aludidos, no existía impedimento o prohibición para que CONSERVE, luego de celebrar una asamblea debidamente convocada, aprobara una contribución extraordinaria. El Tribunal de Apelaciones señaló que el Código Municipal de Puerto Rico, *infra*, y el Reglamento de la Asociación de Residentes, sin mencionar las palabras "derrama" o contribución extraordinaria, permitían la imposición de cuotas relacionadas con el control de acceso. Por esta razón, determinó que el foro primario falló al resolver que el silencio reflejado en el

Código Municipal de Puerto Rico, *infra*, la Escritura Núm. 79 y el Reglamento de la Asociación de Residentes en torno a la aprobación de "derramas" equivalía a una prohibición para imponerlas.

No obstante, el foro apelativo intermedio dispuso que la cuota extraordinaria impuesta por la Asociación de Residentes fue aprobada por un porcentaje mínimo de los titulares, lo que podría lacerar el derecho de éstos de manera injustificada.[6] De igual forma, el Tribunal de Apelaciones sostuvo que la imposición de honorarios de abogado versaba sobre un asunto discrecional del Tribunal de Primera Instancia y, además, que CONSERVE no lo colocó en posición de determinar que el foro primario abusó de su discreción.   Inconforme, el 5 de julio de 2023, la Asociación de Residentes presentó una solicitud de reconsideración, la cual fue denegada mediante una *Resolución* del 6 de julio de 2023.

En desacuerdo con la determinación del foro apelativo intermedio, el 9 de agosto de 2023, CONSERVE presentó una petición de *certiorari* ante este Tribunal.   A grandes rasgos, planteó que el Tribunal de Apelaciones erró al resolver: (1) que los resultados de la votación para aprobar la partida no recurrente o cuota especial eran

---

[6]    A pesar de que el Tribunal de Apelaciones reconoció que la Ley Núm. 129-2020, según enmendada, conocida como Ley de Condominios de Puerto Rico, 31 LPRA sec. 1921 *et seq.*, no aplica al presente caso, utilizó a modo persuasivo lo resuelto por este Tribunal en Pérez Riera v. Con. Tit. Cond. Marymar, 197 DPR 197 (2017), para concluir que los resultados de la votación para aprobar la "derrama" impuesta para gastos legales resultaron insuficientes.

insuficientes y (2) que el foro primario no erró al imponerle honorarios de abogado por temeridad.[7]

Expedido el recurso, y tras la presentación de otros escritos por las partes, el 19 de marzo de 2024, el señor Martínez Maldonado presentó su alegato en oposición. Consecuentemente, el caso quedó sometido en los méritos el 25 de marzo de 2024, por lo cual nos encontramos en posición de resolver.

## II

### A. El Código Municipal de Puerto Rico

#### i. El control de acceso

La Ley Núm. 107-2020, según enmendada, conocida como Código Municipal de Puerto Rico (Código Municipal), 21 LPRA sec. 7001 *et seq.*, compila de manera sistemática, ordenada y actualizada, todas las leyes existentes y vinculadas a la organización, gobierno, administración y funcionamiento de los municipios. Art. 1.002 del Código Municipal, 21 LPRA sec. 7002. El esquema legal puesto en vigor amplió el grado de autonomía de los ayuntamientos con el propósito de que éstos asumieran una función central y fundamental en su desarrollo urbano, social y económico. Art. 1.003 del Código Municipal, 21 LPRA sec. 7003. Como parte de esta nueva estructura gubernamental, y tal y como ocurrió con otros estatutos, se derogó la Ley Núm. 21 de 20 de mayo

---

[7] Cabe señalar que en su petición de *certiorari*, CONSERVE no detalló de manera breve y concisa los errores cometidos por el Tribunal de Apelaciones. No obstante, en su escrito sí incluyó una sección intitulada "S[eñalamiento] y D[iscusión] de E[rrores]" en la que expuso sus planteamientos de manera integrada.

de 1987, según enmendada, conocida como Ley de Control de Tráfico de Vehículos de Motor y Uso Público de Ciertas Calles (Ley de Control de Acceso), 23 LPRA ant. sec. 64 *et seq*. Empero, sus disposiciones se mantuvieron prácticamente inalteradas en el Código Municipal.[8]

A modo ilustrativo, la derogada Ley de Control de Acceso fue concebida con el propósito de proveerle a las comunidades un instrumento para combatir la criminalidad y procurar su cooperación en la lucha contra el crimen. Ley de Control de Acceso (1987 Leyes de Puerto Rico 67). Véanse, además: Jta. Residentes v. SLG Lora-Ayala, 206 DPR 248, 252 (2021); Dorado del Mar v. Weber *et als*., 203 DPR 31, 48 (2019); Alonso Piñero v. UNDARE, Inc., 199 DPR 32, 39-40 (2017); Residentes Sagrado Corazón v. Arsuaga, 160 DPR 289, 300 (2003); Caquías v. Asoc. Res. Mansiones Río Piedras, 134 DPR 181, 186 (1993).

Al igual que ocurre bajo el Código Municipal, el derogado estatuto facultó a los municipios a conceder permisos a las comunidades o urbanizaciones para implementar los mecanismos necesarios para "controlar el acceso vehicular y el uso público de sus calles residenciales". Jta. Residentes v. SLG Lora-Ayala, *supra*, pág. 252 (citando a Alonso Piñero v. UNDARE, Inc., *supra*,

---

[8] El control de acceso de la Urbanización se estableció bajo la derogada Ley de Control de Acceso. Teniendo en cuenta esto, y debido a que el Código Municipal mantuvo básicamente intactas sus disposiciones, aludimos al estatuto derogado, así como a su jurisprudencia interpretativa, la cual es aplicable bajo el nuevo esquema de ley.

pág. 40); <u>Dorado del Mar v. Weber *et als.*</u>, *supra*, pág. 48. Así pues, como requisito para solicitar y obtener el permiso para instaurar el control de acceso, las comunidades y urbanizaciones deben cumplir con una serie de requisitos, tales como, que éstas cuenten con un Consejo, Junta o Asociación de Residentes debidamente organizado y registrado ante el Departamento de Estado como una entidad sin fines de lucro.[9] Art. 3.002(a) del Código Municipal, 21 LPRA sec. 7412.

### ii. La cuota

Una vez adquiere personalidad jurídica, el Consejo, Junta o Asociación de Residentes ostenta facultad para imponer una cuota para sufragar los costos y gastos para instalar, administrar y mantener el control de acceso, incluyendo los salarios o jornales del personal que se contrate. Art. 3.010(a) del Código Municipal, 21 LPRA sec. 7420. Asimismo, posee legitimación activa para cobrar la aludida cuota y reclamar el pago de la deuda judicialmente. <u>Íd.</u> Las personas obligadas a pagar la cuota son: (1) los propietarios de fincas en las que se inscribió la autorización o permiso del control de acceso en el Registro de la Propiedad; (2) los propietarios que autorizaron la solicitud para establecer el control de

---

[9]   Sobre el requisito de incorporación ante el Departamento de Estado, la profesora Margarita E. García Cárdenas nos explica que el mismo responde a la necesidad de que las asociaciones de residentes adquieran personalidad jurídica. Véase M.E. García Cárdenas, *Derecho de urbanizaciones: servidumbres en equidad, controles de acceso e instalaciones vecinales*, Puerto Rico, Ed. InterJuris, 2010, pág. 120.

acceso; (3) los propietarios que han adquirido una finca en una urbanización, calle o comunidad a la que se le ha autorizado el control de acceso o que, a la fecha de la compraventa, se encontrara en proceso de obtener el consentimiento de tres cuartas (3/4) partes de los propietarios y así conste por escrito; (4) los que advengan dueños de un inmueble cuando la solicitud para el establecimiento del control de acceso la realice el urbanizador, desarrollador o constructor, y (5) los que no autorizaron expresamente el establecimiento del sistema de control de acceso, pero posteriormente se comprometieron al pago por escrito. Íd.

Dichos propietarios deben contribuir proporcionalmente con los gastos señalados, mediante el pago de una cuota mensual, la cual se determinará, fijará e impondrá al principio de cada año calendario o fiscal. Art. 3.010(b) del Código Municipal, 21 LPRA sec. 7420. Véase, además, Caquías v. Asoc. Res. Mansiones Río Piedras, *supra*, pág. 211. Sobre este tema, la profesora García Cárdenas sostiene que un Consejo, Junta o Asociación de Residentes, según sea el caso, no está limitado a cobrar únicamente la cantidad necesaria para operar o mantener el control de acceso. M.E. García Cárdenas, *Derecho de urbanizaciones: servidumbres en equidad, controles de acceso e instalaciones vecinales*, Puerto Rico, Ed. InterJuris, 2010, pág. 127. Según intuye, los miembros podrían aportar una cantidad mensual adicional a lo necesario para el

control de acceso, la cual se puede establecer anualmente y a base de las necesidades del ente jurídico, según lo dispongan sus estatutos o reglamentos. Íd., págs. 127-128.

**B. La administración y el funcionamiento interno del Consejo, Junta o Asociación de Residentes**

La Ley Núm. 164-2009, según enmendada, conocida como Ley General de Corporaciones (Ley de Corporaciones), 14 LPRA sec. 3501 *et seq.*, fue aprobada para promover el desarrollo económico, agilizar la gestión corporativa, simplificar los trámites, y expandir el uso de la tecnología. Exposición de Motivos de la Ley Núm. 164-2009 (2009 [Parte 2] Leyes de Puerto Rico 1117). En armonía con esta intención legislativa, las corporaciones gozan de "flexibilidad en sus operaciones, en las actividades a las que puedan dedicarse y para efectuar transacciones". Íd., pág. 1118.

De otra parte, por medio de los estatutos corporativos se establecen los lineamientos respecto a la forma en que operará el Consejo, Junta o Asociación de Residentes. García Cárdenas, *op. cit.*, pág. 122. En esencia, éstos constituyen el reglamento interno de la entidad en virtud del cual se establecen las normas específicas y convenientes (incluso aquellas de autolimitación) para el funcionamiento de la entidad. C.E. Díaz Olivo, *Corporaciones: tratado sobre derecho corporativo*, 2.a ed. rev., Colombia, Ed. Nomos, 2022, pág. 106. Sobre este particular, y en lo pertinente, la Ley de Corporaciones establece que los estatutos pueden contener, entre otras,

disposiciones referentes a los negocios de la persona jurídica, a la marcha de sus asuntos, así como a sus derechos o poderes siempre que no sean contrarios a la ley o al certificado de incorporación. Art. 1.08(b) de la Ley de Corporaciones, 14 LPRA sec. 3508. Tampoco pueden ser contrarios a la moral, el orden público o a la política pública. Díaz Olivo, *op. cit.*, pág. 106. A modo ilustrativo, los estatutos suelen contener las fechas y la forma de convocar a las reuniones, el quórum requerido para éstas, las normas relativas a la toma de decisiones o votaciones especiales, así como al funcionamiento interno de la Junta de Directores. Íd. Véase, además, García Cárdenas, *op. cit.*, págs. 122-123 y 127.

Ahora bien, a pesar de que, como regla general, la administración y el funcionamiento del Consejo, Junta o Asociación de Residentes se lleva a cabo de acuerdo con lo estipulado en el reglamento de la corporación, en aquellos casos en los que este último guarde silencio, regirá -de manera supletoria- la Ley de Corporaciones. García Cárdenas, *op. cit.*, pág. 183. Al abundar sobre este punto, la profesora García Cárdenas añade que en las urbanizaciones o comunidades con control de acceso y servidumbres en equidad no rige el estatuto referente al régimen de propiedad horizontal. Íd. Según la autora, al tratarse de una corporación, lo que ha de regir es la Ley de Corporaciones y los estatutos de la empresa. Íd.

## C. El Reglamento de la Asociación del Consejo de Seguridad y Recreación Villamar Este

El Reglamento de la Asociación de Residentes fue aprobado en el 1993 y enmendado en el 2021.[10] Dicho cuerpo normativo fue adoptado con la finalidad de promover la sana convivencia, seguridad y bienestar de los titulares y residentes, de preservar el entorno físico de la comunidad[11] y de implementar, mantener y proveer un ambiente de privacidad y seguridad en las residencias y propiedad comunal mediante un sistema de acceso controlado en conformidad con las disposiciones del Código Municipal.[12]

Entre las facultades y deberes de CONSERVE, se destacan las siguientes:

g. Otorgar contratos […].

h. Aprobar un plan de gastos e ingresos previsible para cada año fiscal y el estado de cuentas correspondiente al año que finaliza. El año fiscal será desde el primero de noviembre de cada año hasta el 31 de octubre de cada año.

[…]

k. Establecer las cuotas mensuales correspondientes a los [t]itulares, cobrarlas,

---

[10] *Reglamento de la Asociación de Residentes*, Apéndice del *certiorari*, pág. 27.

[11] *Introducción del Reglamento de la Asociación de Residentes*, Apéndice del *certiorari*, pág. 30. Valga señalar que CONSERVE fue creada en el 1990 como una corporación sin fines de lucro al amparo de la derogada Ley General de Corporaciones de 1956, Ley Núm. 3 de 9 de enero de 1956 (1955-1956 [Quinta a Octava Sesiones Especiales] Leyes de Puerto Rico 104). No obstante, la enmienda de su reglamento en el 2021 se aprobó en virtud de la Ley Núm. 164-2009, según enmendada, conocida como Ley General de Corporaciones (Ley de Corporaciones), 14 LPRA sec. 3501 *et seq.*, y del Código Municipal. *Incisos 1.1 y 3.1 del Reglamento de la Asociación de Residentes*, Apéndice del *certiorari*, pág. 30.

[12] *Inciso 6.1 del Reglamento de la Asociación de Residentes*, Apéndice del *certiorari*, pág. 33.

administrar dichos fondos y emplearlos en beneficio de la comunidad.

[…]

m. **Emplear o contratar aquellas personas naturales o jurídicas que estime conveniente para el servicio de seguridad, limpieza, mantenimiento general y ornato[,] etc.**

n. **La Asociación [de Residentes] es responsable,** a través del presidente(a) de su Junta de Directores, **de representar y acudir, de ser necesario, a los tribunales (estatal o federal), agencias administrativas (estatales, municipales o federales), o foros pertinentes para hacer valer las disposiciones de [] [su] Reglamento, así como de cualquier ley, ordenanza o reglamento aplicables, y evitar o impedir que cualquier propietario viole las mismas.**

[…]

v. Velar porque las decisiones o determinaciones de la Asociación [de Residentes] se lleven a cabo o se hagan de acuerdo con el debido proceso de ley y de acuerdo con los procesos democráticos establecidos en [] [su] [R]eglamento.[13] (Bastardilla omitida y negrilla suplida).

Respecto a las cuotas, el inciso 14.1 del Reglamento de la Asociación de Residentes establece que:

**La cuota mensual para el mantenimiento de las facilidades del acceso controlado de la Urbanización, serán aprobados para cada año en la Asamblea Anual de residentes.** Dicha cuota vence, en o antes del día diez (10) de cada mes. Para esta aprobación deberá[n] tomarse en consideración[:] [1] los costos por concepto de administración y mantenimiento del sistema de seguridad (control del acceso)[;] [2] [los] gastos necesarios en áreas comunes[,] **y [3] cualquier otro gasto necesario que se tenga que incurrir con el propósito de diligenciar y**

---

[13] *Inciso 7.1 del Reglamento de la Asociación de Residentes*, Apéndice del *certiorari*, págs. 33-35.

**cumplir con el propósito de[l] [] Reglamento.**[14] (Bastardilla omitida y negrilla suplida).

De otra parte, el inciso 18.3 del Reglamento de la Asociación de Residentes dispone, en lo pertinente, lo siguiente:

> Los asuntos por considerarse en [] [la] Asamblea [Anual] serán […]; la aprobación del presupuesto anual de los gastos de administración del sistema de acceso controlado y cualquier otro asunto que propiamente se traiga a consideración en dicha Asamblea [Anual]. Todas las Asambleas Anuales serán generales, o sea, sujeta[s] a la consideración de cualquier asunto dentro del marco de autoridad de la Junta de Directores, excepto en aquellos casos donde [] [el] Reglamento requiera una notificación especial sobre dicho asunto.[15] (Bastardilla omitida).

El aludido reglamento indica, además, que el quórum de las asambleas consistirá en por lo menos una tercera (1/3) parte de todos los miembros activos de la Asociación de Residentes.[16] No obstante, cuando en una asamblea no se obtenga el quórum requerido por falta de asistencia de los titulares activos en la fecha indicada en la convocatoria, se procederá a citar una nueva convocatoria mediante una espera de treinta (30) minutos.[17] **En esa reunión, el quórum**

---

[14] *Inciso 14.1 del Reglamento de la Asociación de Residentes*, Apéndice del *certiorari*, pág. 42.

[15] *Inciso 18.3 del Reglamento de la Asociación de Residentes*, Apéndice del *certiorari*, pág. 45.

[16] *Inciso 21.1 del Reglamento de la Asociación de Residentes*, Apéndice del *certiorari*, pág. 47.

[17] *Inciso 21.2 del Reglamento de la Asociación de Residentes*, Apéndice del *certiorari*, pág. 47.

**se constituirá con los titulares activos presentes y los acuerdos que así se tomen tendrán completa validez.[18]**

Finalmente, los acuerdos se tomarán por mayoría de votos.[19] No obstante, para enmendar el Reglamento de la Asociación de Residentes, se requerirá el voto de por lo menos dos terceras (2/3) partes de los titulares o miembros activos.[20]

**D. Los honorarios de abogado y la temeridad**

La Regla 44.1 (d) de Procedimiento Civil, 32 LPRA Ap. V, R. 44.1 (d), regula lo concerniente a la imposición de honorarios de abogado. Pérez Rodríguez v. López Rodríguez *et al.*, 210 DPR 163, 192 (2022). Así pues, dispone que si en un pleito cualquier parte o su abogado ha procedido con temeridad o frivolidad, el tribunal deberá imponerle el pago de una suma por concepto de honorarios de abogado. Íd. La determinación de si una parte actuó o no temerariamente es un asunto que descansa en la discreción de los tribunales. Íd. Sin embargo, si el foro judicial entiende que cualquier parte en un litigio actuó con temeridad, la imposición de honorarios de abogado es mandatoria. Íd., págs. 192-193.

Hemos expresado que la temeridad "conlleva aquellas actuaciones de un litigante que lleven a un pleito que pudo

---

[18] Íd.

[19] *Inciso 21.4 del Reglamento de la Asociación de Residentes*, Apéndice del *certiorari*, pág. 47.

[20] *Inciso 21.5 del Reglamento de la Asociación de Residentes*, Apéndice del *certiorari*, pág. 47.

evitarse, que provoquen la prolongación indebida del trámite judicial o que obliguen a la otra parte a incurrir en gastos innecesarios para hacer valer sus derechos". SLG González-Figueroa v. SLG *et al.*, 209 DPR 138, 148 (2022). La razón principal para imponer honorarios de abogado es penalizar al litigante perdidoso que, por su terquedad, obstinación, contumacia e insistencia en una actitud desprovista de fundamentos, obliga a la otra parte a asumir, innecesariamente, las molestias, los gastos, trabajo e inconvenientes de un pleito. Pérez Rodríguez v. López Rodríguez *et al.*, *supra*, pág. 193; SLG González-Figueroa v. SLG *et al.*, *supra*, pág. 149; Fernández v. San Juan Cement Co., Inc., 118 DPR 713, 718 (1987). Es decir, constituye la mejor arma que poseen los tribunales para garantizar la solución justa, rápida y económica de los procedimientos judiciales, así como para proteger a los litigantes de la dilación y gastos innecesarios. SLG González-Figueroa v. SLG *et al.*, *supra*, pág. 149.

En línea con lo anterior, también hemos resuelto que no es temerario aquel que plantea controversias o asuntos complejos o novedosos aún no resueltos en nuestra jurisdicción, o cuando existe algún desacuerdo honesto respecto al derecho aplicable a los hechos del caso. Íd. Ahora bien, toda vez que la imposición de honorarios de abogado es un asunto discrecional, los tribunales apelativos intervendrán únicamente cuando surja en tal

concesión un claro abuso de discreción.  <u>Pérez Rodríguez</u>
<u>v. López Rodríguez</u> *et al.*, *supra*, pág. 193.

**III**

La Asociación de Residentes plantea que el Tribunal de
Apelaciones falló al concluir que los resultados de la
votación para aprobar la "derrama" para honorarios de
abogado y gastos legales fueron insuficientes, pues obtuvo
el voto mayoritario de los miembros, según lo dispone y
requiere su reglamento.  **<u>Le asiste la razón</u>**.  CONSERVE
también sostiene que el foro apelativo intermedio erró al
confirmar la imposición de honorarios de abogado por
temeridad en su contra.  Respecto a este punto, la
Asociación de Residentes indica que no actuó de manera
temeraria al defenderse de una reclamación que involucra
un asunto novel; en la que se cuestionaron sus actuaciones
y su reglamento, y en la que existen fundamentos legítimos
para hacer valer la imposición de la "derrama".  **<u>También</u>**
**<u>le asiste la razón</u>**.

Por su parte, el recurrido plantea que CONSERVE no
posee facultad para imponer una "derrama",
independientemente de que la misma se apruebe por mayoría
o unanimidad de sus miembros.  A tono con esta postura, el
señor Martínez Maldonado sostiene que sí está conforme con
la determinación del Tribunal de Apelaciones al confirmar
al foro primario, pero no así con los fundamentos en
derecho de su dictamen.  Así pues, el recurrido argumenta
que el foro apelativo intermedio erró: (1) al aplicar las

reglas de hermenéutica, y (2) al resolver que CONSERVE podía imponer una "derrama" para gastos legales debido a que las asociaciones de residentes poseen facultades limitadas y, además, ni el Código Municipal ni la Escritura Núm. 79 ni el Reglamento de la Asociación de Residentes proveen para ello.

Por otro lado, el señor Martínez Maldonado razona que, a la luz del Art. 3.010 del Código Municipal, *supra*, CONSERVE sólo puede imponer una cuota para cubrir los costos y gastos de instalación, operación y mantenimiento del sistema de control de acceso y no una "derrama" aparte de la cuota mensual. Es decir, el recurrido entiende que el legislador fue claro al establecer que las asociaciones de residentes sólo pueden imponer una cuota, lo que implica una prohibición para imponer cualquier otra cuota. Finalmente, el señor Martínez Maldonado sostiene que los foros inferiores actuaron correctamente al imponer honorarios de abogado por temeridad.

Por estar estrechamente relacionados entre sí, discutiremos los señalamientos de error de la Asociación de Residentes de manera conjunta.

En el presente caso, el Tribunal de Apelaciones confirmó la determinación del Tribunal de Primera Instancia, aunque por otros fundamentos. En esencia, el foro apelativo intermedio resolvió, distinto al foro primario, que CONSERVE ostenta facultad para imponerle a sus miembros una "derrama" para gastos legales. El

Tribunal de Apelaciones dispuso que, a pesar de que las disposiciones legales aplicables no contemplan expresamente el concepto "derrama", tampoco impiden o prohíben su imposición, por lo cual concluyó que una asociación de residentes debidamente incorporada y convocada en asamblea sí puede aprobar una "derrama" o contribución extraordinaria cuyo propósito sea en beneficio de la comunidad.[21] **Coincidimos con el foro apelativo intermedio en cuanto a que un Consejo, Junta o Asociación de Residentes puede aprobar una partida no recurrente o cuota especial para gastos legales y añadimos que dicha facultad está comprendida dentro de los poderes implícitos de las asociaciones de residentes para administrar y mantener el control de acceso.** Nótese, además, que CONSERVE ostenta facultad expresa (por vía de su reglamento interno) para considerar en la cuota mensual de mantenimiento cualquier otro gasto en el que necesariamente deba incurrir para diligenciar y cumplir con el propósito del Reglamento de la Asociación de Residentes.

Sin embargo, el Tribunal de Apelaciones entendió que el resultado de la votación (por mayoría de los miembros presentes en la Asamblea Anual) para aprobar la cuota especial fue insuficiente. A modo persuasivo, el foro apelativo intermedio resaltó lo resuelto por este Tribunal

---

[21] *Inciso 14.1 del Reglamento de la Asociación de Residentes*, Apéndice del *certiorari*, pág. 42.

en <u>Pérez Riera v. Con. Tit. Cond. Marymar</u>, 197 DPR 197 (2017), para sustentar su determinación en cuanto a la insuficiencia de la votación. Cabe señalar que **en aquel momento atendimos una controversia relacionada con el régimen de propiedad horizontal** en la que interpretamos, a la luz de la derogada Ley Núm. 103-2003, según enmendada, conocida como Ley de Condominios, 31 LPRA ant sec. 1291 *et seq.*, que un "Consejo de Titulares sólo puede aprobar obras de mejoras que impliquen la imposición de una derrama mediante el acuerdo unánime de los titulares". <u>Pérez Riera v. Con. Tit. Cond. Marymar</u>, *supra*, págs. 199-200. Entendimos que si un número reducido de los titulares (o mayoría de los presentes) aprobaba una derrama vinculante para todos los demás, se laceraría injustificadamente el derecho de los titulares a disfrutar de su propiedad privativa. <u>Íd.</u>, pág. 212.

Específicamente, la norma que allí pautamos tuvo el propósito de

> […] **protege[r] a los titulares de condominios sometidos al régimen de propiedad horizontal al evitar que, sin su consentimiento, se les impongan gastos adicionales dirigidos a <u>costear obras que, por su propia naturaleza, no son necesarias</u>**. Se trata, pues, de una lectura integral de la Ley de Condominios que toma en consideración el fin cardinal de la horizontalidad: hacer viable el disfrute de la propiedad individual. Nuestra conclusión en nada impide la aprobación de obras de mejora. Más bien, […], si el condominio no cuenta con los fondos suficientes, el Consejo de Titulares deberá hacer los ajustes presupuestarios necesarios **para costear este tipo de obras sin imponer a los titulares una carga económica adicional, abrupta y no consentida**. <u>Íd.</u>, pág. 213. (Negrilla y subrayado suplidos).

Valga aclarar, en primer término, que no estamos ante un caso relacionado con el régimen de propiedad horizontal, sino frente a unas controversias que involucran a la Asociación de Residentes de una urbanización con control de acceso, la cual por su naturaleza corporativa se rige y gobierna por un esquema legal distinto al establecido en la actual Ley Núm. 129-2020, según enmendada, conocida como Ley de Condominios de Puerto Rico (Ley de Condominios de 2020), 31 LPRA sec. 1921 *et seq*. En segundo término, tampoco estamos ante la aprobación de una derrama para costear obras de mejora permanentes que no sean de mantenimiento dirigidas a aumentar el valor de la propiedad o a proveer mejores servicios para el disfrute del inmueble o de áreas comunes, según lo establece el Art. 3 (q) de la Ley de Condominios de 2020, 31 LPRA sec. 1921b (q). Estamos más bien ante una partida o cuota especial no recurrente para honorarios de abogado y gastos legales denominada "derrama", a ser satisfecha en el periodo de tres (3) meses. Establecida esta diferencia, y por tratarse de un asunto que versa sobre el funcionamiento interno de la corporación sin fines de lucro, regiremos nuestro análisis conforme a las disposiciones del Reglamento de la Asociación de Residentes para determinar si era necesario el voto mayoritario o unánime de los miembros de CONSERVE. Veamos.

El Reglamento de la Asociación de Residentes dispone, en lo pertinente, que establecido el quórum, **los acuerdos**

**que se tomen serán por mayoría de votos.**[22] Esta norma cede cuando se quiere enmendar dicho reglamento, para lo cual es necesario el voto de por lo menos dos terceras (2/3) partes de los titulares o miembros activos.[23] No existe controversia en el caso de autos respecto a que la partida no recurrente de $150.00 fue aprobada mediante el voto mayoritario de los miembros presentes en la Asamblea Anual de la Asociación de Residentes. Así lo consignó el Tribunal de Primera Instancia en las determinaciones de hechos de la *Sentencia* del 7 de diciembre de 2022.[24] No obstante, el Tribunal de Apelaciones entendió que, por tratarse de una contribución extraordinaria, no procedía la aplicación de las disposiciones del Reglamento de la Asociación de Residentes relativas a los asuntos ordinarios. Al así resolver, erró el foro apelativo intermedio, pues no sólo anuló el resultado de una votación válida, por mayoría, **la cual estuvo apoyada por el Reglamento de la Asociación de Residentes**, sino que anuló la voluntad de los titulares que estuvieron presentes en la Asamblea Anual y que ejercieron su derecho al voto.

No encontramos fundamento legal alguno que nos lleve a concluir que para aprobar una partida no recurrente o cuota

---

[22] *Incisos 21.1, 21.2 y 21.4 del Reglamento de la Asociación de Residentes*, *supra*. Apéndice del *certiorari*, pág. 47.

[23] *Inciso 21.5 del Reglamento de la Asociación de Residentes*, *supra*. Apéndice del *certiorari*, pág. 47.

[24] *Determinaciones de hechos de la Sentencia del Tribunal de Primera Instancia*, Apéndice del *certiorari*, pág. 220.

especial, bajo el contexto del presente caso, sea necesario el voto unánime de los miembros de CONSERVE. Por supuesto, el requisito de mayoría o unanimidad dependerá en gran medida de lo que establezcan las asociaciones de residentes en sus reglamentos internos, pues, como entidades con personalidad jurídica, poseen amplia flexibilidad para regular la operación y marcha de sus asuntos, así como para imponer a sus miembros deberes y obligaciones, siempre que no sean onerosos ni irrazonables o contrarios a la ley, la moral o el orden público.

Respecto a la razonabilidad de la cuota especial que se impuso añadimos que, como corporación sin fines de lucro, la Asociación de Residentes se ve precisada a comparecer ante los foros judiciales mediante representación legal. Esto implica que si no contrata los servicios profesionales de un abogado -quien fijará unos honorarios e incurrirá en unos gastos-, no puede acudir a los tribunales para hacer valer los derechos de sus miembros, cumplir con sus deberes y obligaciones (entre los que se encuentran mantener el control de acceso operando) y defenderse de las reclamaciones que se insten en su contra. Entonces, ¿cómo se pagan estos gastos si CONSERVE no posee los recursos económicos? La respuesta es simple, por medio de la aprobación de un fondo para dichos fines, según se hizo.

En virtud de las facultades expresas que poseen los Consejos, Juntas o Asociaciones de Residentes para

administrar y mantener el control de acceso, así como para adoptar sus reglamentos internos y gobernar sus asuntos, resolvemos que éstos pueden aprobar una partida no recurrente, cuota especial o cualquier otra, en la medida en que ésta sea necesaria, y cumplan con los requisitos y procesos de votación que hayan adoptado los miembros, salvo que otra cosa se disponga mediante ley o reglamentación. Téngase en cuenta que las determinaciones que tomen las asociaciones de residentes en virtud de sus poderes y facultades nunca podrán ser arbitrarias, irrazonables o contrarias a la ley, la moral o el orden público.

Finalmente, surge del expediente que la Asociación de Residentes se defendió vehementemente de una reclamación con controversias legales reales para hacer valer la procedencia de la derrama aprobada, por lo cual corresponde que dejemos sin efecto la imposición de honorarios de abogado en ausencia de temeridad. Así pues, concluimos que erró el Tribunal de Apelaciones al confirmar la determinación del foro primario sobre este asunto.

## IV

Por los fundamentos antes expresados, se confirma aquella parte de la *Sentencia* emitida el 23 de junio de 2023 por el foro apelativo intermedio en la que se determinó que no existe limitación, impedimento o prohibición en el Código Municipal ni el Reglamento de la Asociación de Residentes para que CONSERVE, debidamente convocada en asamblea, apruebe una partida no recurrente,

cuota especial o contribución extraordinaria como la aquí envuelta. No obstante, se revoca aquella parte de la *Sentencia* en la que el Tribunal de Apelaciones resolvió que el resultado de la votación en cuestión fue insuficiente. A tales efectos, disponemos que la cuota especial no recurrente impuesta por la Asociación de Residentes es válida, pues ésta obtuvo el voto a favor de una mayoría de los miembros, según lo requiere su reglamento. Consecuentemente, procede el pago de $150.00 por parte del señor Martínez Maldonado. De igual forma, se deja sin efecto la imposición de honorarios de abogado contra CONSERVE. Así modificada, se confirma la *Sentencia* recurrida.

Se dictará Sentencia en conformidad.


                                    ROBERTO FELIBERTI CINTRÓN
                                          Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

|  |  |  |
|---|---|---|
| Héctor J. Martínez Maldonado<br><br>Recurrido<br><br>v.<br><br>Consejo de Seguridad y Recreación de Urbanización Villamar Este, Inc. (CONSERVE)<br><br>Peticionario | CC-2023-536 | *Certiorari* |

SENTENCIA

En San Juan, Puerto Rico a 3 de diciembre de 2024.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente Sentencia, se confirma aquella parte de la *Sentencia* emitida el 23 de junio de 2023 por el foro apelativo intermedio en la que se determinó que no existe limitación, impedimento o prohibición en el Código Municipal ni el Reglamento de la Asociación de Residentes para que el Consejo de Seguridad y Recreación de la Urbanización Villamar Este, Inc. (CONSERVE o Asociación de Residentes), debidamente convocada en asamblea, apruebe una partida no recurrente, cuota especial o contribución extraordinaria como la aquí envuelta. No obstante, se revoca aquella parte de la *Sentencia* en la que el Tribunal de Apelaciones resolvió que el resultado de la votación en cuestión fue insuficiente. A tales efectos, disponemos que la cuota especial no recurrente impuesta por la Asociación de Residentes es válida, pues ésta obtuvo el voto a favor de una mayoría de los miembros, según lo requiere su reglamento. Consecuentemente, procede el pago de $150.00 por parte del señor Martínez Maldonado. De igual forma, se deja sin efecto la imposición de honorarios de abogado contra CONSERVE. Así modificada, se confirma la *Sentencia* recurrida.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo.


                              Javier O. Sepúlveda Rodríguez
                              Secretario del Tribunal Supremo