Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL XI

| MIRIAM ALBA ZAMPARELLI, RICHARD JENKS VEGA, EUGENE SCOTT<br><br>Apelantes<br><br>v.<br><br>G.H.S., INC., POR VÍA DE SU AGENTE RESIDENTE, OSVALDO VALIENTE MILDRED MÉNDEZ, EN SU CALIDAD DE PRESIDENTA DE G.H.S., INC.; JAVIER VIZCARRONDO, EN SU CALIDAD DE ADMINISTRADOR DE G.H.S., INC.<br><br>Apelados | TA2025AP00440 | APELACIÓN<br>Procedente del Tribunal de Primera Instancia, Sala de GUAYNABO<br><br>Caso Núm.:<br>GB2024CV01022<br><br>Sobre:<br>Sentencia Declaratoria Entredicho Temporero Interdicto Preliminar Interdicto Permanente Daños (nominales) |
|---|---|---|

Panel integrado por su presidenta la Jueza Rivera Marchand, la Jueza Mateu Meléndez, la Jueza Boria Vizcarrondo y el Juez Robles Adorno.

Mateu Meléndez, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 19 de diciembre de 2025.

El 14 de octubre de 2025, Miriam Alba Zamparelli, Richard Jenks Vega y Eugene Scott (en conjunto, los apelantes) sometieron un recurso de *Apelación*, mediante el cual nos solicitan que revoquemos la *Sentencia Parcial* emitida el 23 de junio de 2025 por el Tribunal de Primera Instancia, Sala Superior de Guaynabo (TPI o foro primario). Mediante la referida determinación, el TPI desestimó con perjuicio la *Demanda* incoada por los apelantes en cuanto a la Sra. Mildred Méndez (Sra. Méndez), en su calidad de presidenta de G.H.S. Inc. y el Sr. Javier Vizcarrondo (Sr. Vizcarrondo), en su calidad de administrador de G.H.S., Inc. (en conjunto, apelados).[1]

---

[1] En esa misma fecha, sometieron una *Moción en auxilio de jurisdicción para detener todo procedimiento ante el Tribunal de Primera Instancia,* en la que se nos solicitó que paralizáramos

Evaluado el legajo apelativo y los argumentos de las partes, **confirmamos** el dictamen apelado.

**-I-**

El presente caso tiene su génesis el 18 de noviembre de 2024, cuando los apelantes, quienes son residentes de la Urbanización Garden Hills Sur, radicaron una *Demanda* en solicitud de *injunction* preliminar y permanente, entredicho permanente, sentencia declaratoria y daños nominales contra los apelados y la corporación G.H.S. Inc.

En el referido recurso, solicitaron al TPI la paralización de la convocatoria de una reunión de miembros de G.H.S. Inc., pautada para el 20 de noviembre de 2024, por falta de notificación adecuada. Lo antes, mediante la expedición de un entredicho preliminar, interdicto temporero y permanente. Asimismo, suplicaron al TPI que vía sentencia declaratoria declarara improcedente los Estatutos de G.H.S. por ser contrarios a la Ley Núm. 21 de 20 de mayo de 1987, según enmendada, conocida como la "Ley de Control de Acceso de 1987" (Ley Núm. 21-1987), 23 LPRA sec. 64e *et seq.* Además, reclamaron daños nominales por el agravio de acudir a los foros judiciales para incoar la presente causa de acción.

Ese día, los apelantes también presentaron una *Moción Urgente en Auxilio de Jurisdicción* ante el TPI. En suma, solicitaron la paralización y suspensión de la reunión ordinaria convocada por los oficiales de G.H.S. para el 20 de noviembre de 2024. Argumentaron que el fin de la convocatoria era aumentar la cuota mensual de mantenimiento para los miembros de G.H.S., en ausencia de debida notificación para algunos residentes. Además, suplicaron la nulidad de la primera reunión invocada por los oficiales de G.H.S. en julio de 2024, por esta ser *ultra vires* y contraria a los Estatutos de G.H.S.

---

los procedimientos ante el tribunal inferior mientras dilucidábamos la controversia. El 16 de octubre de 2025, dictamos *Resolución* en la que declaramos no ha lugar el auxilio y concedimos plazo a la parte apelante para que compareciera.

Evaluado lo anterior, el foro primario emitió una *Orden* en la que declaró No Ha Lugar a la solicitud de paralización de la reunión del 20 de noviembre de 2024, así como a la nulidad de la reunión realizada en julio de 2024. Además, convirtió el pleito de autos en un procedimiento ordinario. Luego de varios asuntos procesales que son innecesarios pormenorizar, los apelados contestaron la demanda. En síntesis, alegaron que la demanda incoada no ostentaba una reclamación que amerite la concesión de un remedio.

Así las cosas, el 3 de noviembre de 2025, luego de comenzado el descubrimiento de prueba, los apelados presentaron *Moción de Desestimación*. En esta, solicitaron la desestimación parcial con perjuicio de la *Demanda* instada contra la Sra. Méndez y el Sr. Vizcarrondo. Reiteraron que las únicas alegaciones vertidas contra estos eran aquellas enumeradas en los párrafos 5 y 7 de la *Demanda*. En suma, las mencionadas alegaciones versan exclusivamente sobre la falta de notificación de la reunión extraordinaria convocada para el mes de julio de 2024.

En ese sentido, los apelados aducen que dichas alegaciones no están atadas a los reclamos subsistentes conforme a la nulidad de los Estatutos de G.H.S. y los daños nominales invocados. Aun así, añadieron que, para la imposición de responsabilidad por las actuaciones de los oficiales de una corporación, solamente los accionistas o miembros de esta podrían incoar una causa acción derivativa ante la incurrencia de negligencia crasa. Por lo tanto, figuraron que el reclamo de los apelantes únicamente procede en contra de la corporación, G.H.S., Inc.

En su réplica, los apelantes reclamaron que las actuaciones de los directivos y oficiales de la corporación constituyeron negligencia crasa por estar fuera de sus responsabilidades fiduciarias. Entre las conductas señaladas se encuentran: mantener un registro de mascotas, convocar una fiesta, manifestar preocupación por asuntos fuera del perímetro de la

urbanización, aumentar la cuota de mantenimiento y convocar una reunión extraordinaria que excluyó el voto por proxy. Ante este marco, suplicaron al foro primario denegar la *Moción de Desestimación* y continuar con el descubrimiento de prueba.

Evaluados los petitorios de las partes, el TPI emitió *Sentencia Parcial* en la que desestimó con perjuicio la causa de acción en cuanto a la Sra. Méndez y el Sr. Vizcarrondo. En su dictamen, dirimió que la demanda carece de alegaciones fácticas que establezca hechos demostrativos que configuren una causa de acción. Incluyó que, de existir una reclamación por negligencia crasa en cuanto a estos, quienes ostentan legitimación activa para incoar un recurso en atención a los derechos de la corporación sería G.H.S., Inc. o sus miembros.

Insatisfechos, los apelantes presentaron una *Moción Solicitando Reconsideración*. En suma, alegaron que el descubrimiento de prueba les permitiría exponer alegaciones con mayor especificidad. En la alternativa, solicitaron al foro primario enmendar la demanda para exponer detalladamente los actos negligentes que conllevan una causa de acción en contra de los directores y oficiales en su carácter personal.  Por entender que el dictamen era prematuro, reiteraron la denegatoria y la continuación del descubrimiento de prueba.

Atendido el recurso, el 11 de septiembre de 2025, el foro primario emitió una *Resolución* en la que declaró No Ha lugar a la petición de reconsideración. En desacuerdo aun, los apelantes instaron el recurso de epígrafe y señalaron la comisión de los siguientes errores:

> PRIMER ERROR: Erró el tribunal de primera instancia al confundir el alcance de la Ley 21-1987, la cual tiene una función específica que es proteger a la comunidad controlando el acceso a las urbanizaciones. La referida ley no es una organización de propietarios (llamado en inglés home owners association), lo cual [confunde] el tribunal de primera instancia, al no reconocer que los oficiales de la corporación actúan *ultra vires* ante el mandado de la ley y la voluntad de

los residentes que solicitaron dicha estructura en su urbanización.

SEGUNDO ERROR: Erró el tribunal de primera instancia al no considerar que las actividades que realizan los oficiales de la corporación son en claro desafío a la ley de control de acceso, ley 21-1987, según enmendada, y que sus actos constituyen una acción negligente por la cual los miembros de la organización, aquí la parte demandante, puede exigir responsabilidad legal.

Como arriba señalamos, ese día también solicitó nuestro auxilio y la paralización del caso ante instancia; petición que no concedimos. En atención a nuestro mandato, el 1 de diciembre de 2025, los apelados presentaron un *Alegato en Oposición*, por lo que damos sometido el asunto y procedemos a resolver.

**-II-**

*A.*

La Ley Núm. 107-2020, según enmendada, conocida como el "Código Municipal de Puerto Rico" (Código Municipal), 21 LPRA sec. 7001 *et seq.*, se aprobó con el fin ulterior de atender las necesidades de los gobiernos de los ayuntamientos mediante el establecimiento de una estructura municipal adaptada a los tiempos modernos, para que se renueven y busquen alternativas reales ante el nuevo escenario mundial al que se enfrentan. Como parte de esta nueva estructura gubernamental a nivel de los municipios, se derogó la Ley Núm. 21-1987 y se incorporaron sus disposiciones al nuevo Código Municipal.

En sintonía con el Código Municipal, la derogada pieza legislativa fue concebida con el fin de proveerle a las comunidades un vehículo para combatir la criminalidad. Cónsono con ello, facultó a los municipios a obtener el permiso de instaurar el control de acceso en las urbanizaciones, siempre y cuando cumplan con una serie de requisitos. *Martínez Maldonado v. Consejo de Seguridad y Recreación de Urbanización Villamar Este, Inc.*, 2024 TSPR 125; 215 DPR _____. Entre ellos, un Consejo, Junta o una Asociación de Residentes debidamente organizada y registrada en el Departamento de

Estado como una institución sin fines de lucro. Código Municipal, *supra*, sec. 7412.

*B.*

Como regla general, la administración y el funcionamiento del Consejo, Junta o Asociación de Residentes, al tratarse de una corporación, regirá en virtud de Ley de Corporaciones y los estatutos de la corporación. *Martínez Maldonado v. Consejo de Seguridad y Recreación de Urbanización Villamar Este, Inc., supra.*

El Art. 2.03 de la Ley 164-2009, mejor conocida como Ley General de Corporaciones (Ley 164-2009), 14 LPRA Sec. 3523, establece que los poderes otorgados a los directores y oficiales de una corporación deben ejercerse en beneficio de los accionistas de esta y para la gestión prudente de sus negocios y asuntos, así como para la promoción de sus objetivos y propósitos. Al ejercer estos poderes gerenciales, los directores y oficiales deben cumplir con ciertos deberes de fiducia. A tales efectos, la Ley 164-2009 en su Art. 4.03 y Art. 4.04 dispone:

> **Artículo 4.03- Obligación de directores y oficiales en el desempeño de sus funciones**
>
> Los directores y oficiales estarán obligados a dedicar a los asuntos de la corporación y al desempeño de sus funciones, la atención y el cuidado que en una posición similar y ante circunstancias análogas desempeñaría un director u oficial responsable y competente al ejercer de buena fe su juicio comercial o su mejor juicio en el caso de las corporaciones sin fines de lucro. **Sólo la negligencia crasa en el desempeño de las obligaciones y deberes antes reseñados conllevará responsabilidad.**
>
> **Artículo 4.04- Deber de lealtad de directores, oficiales y accionistas mayoritarios.**
>
> Los directores, oficiales y accionistas mayoritarios, cuando tengan intereses personales en asuntos que afecten la corporación, estarán sujetos al deber de lealtad que les obliga a actuar de forma justa en relación con los asuntos corporativos.

El deber de diligencia contenido en el artículo 4.03 de la Ley 164-2009 trata sobre la atención y el cuidado que en una posición similar debería exhibir un director u oficial responsable y competente al ejercer de buena fe su juicio comercial. Por su parte, el deber de lealtad establecido en el

Artículo 4.04 antes transcrito, **implica que los administradores llevarán a cabo sus funciones para el beneficio de la corporación**, y no para el suyo propio. *Multinational Ins. v. Benítez y otros*, 193 DPR 67, 78 (2015). Cuando los directores y oficiales de una corporación incumplen con las obligaciones impuestas por los deberes de fiducia encomendados, **estos podrían ser responsables civilmente por sus actuaciones ante la corporación que administran**. *Íd.*

Nuestro más alto foro ha reconocido que el criterio de negligencia crasa debe interpretarse "en el contexto del imperativo de fiducia que rige la relación de los directores y los oficiales frente a la corporación". *Rivera Sanfeliz et al. v. Jta. Dir. First Bank*, 193 DPR 38, 53 (2015). Ante este marco, el incumplimiento de sus deberes inherente a sus funciones se producirá exclusivamente de cara a la corporación y solamente si esta sufre daños como consecuencia del quebrantamiento. *Íd.*

En lo pertinente al caso de autos, sabido es que como corolario de la personalidad jurídica propia que ostenta por virtud de ley, una corporación tiene capacidad de demandar y ser demandada. Art. 2.02(b) de la Ley 164-2009, 14 LPRA Sec. 3522(b). Por ello, una corporación tiene legitimación activa para entablar una acción civil para resarcir daños ocasionados por terceros, incluyendo pasados directores y oficiales de la corporación que incumplen con su deber de fiducia. De igual forma, existen situaciones en las cuales los accionistas de una corporación desean llevar acciones civiles a nombre de esta. Este tipo de reclamación es conocida como una acción derivativa y puede definirse como una reclamación judicial de una causa de acción propia de la corporación que es iniciada por sus accionistas, en casos en los que la propia corporación falla en reclamar sus derechos contra aquellas personas que, ya sean externas o internas, le han causado un daño a la entidad. *Multinational Ins. v. Benítez y otros*, supra, (citas omitidas). De ordinario, los pleitos de naturaleza derivativa son pleitos fundamentados

en violaciones a los deberes fiduciarios de lealtad y diligencia por parte de los administradores de la corporación. *Íd.*

El Art. 12.10 de la Ley 164-2009, codifica lo relativo a la legitimación activa para entrabar reclamaciones por corporaciones sin fines de lucro en nuestra jurisdicción. El referido artículo reza como sigue:

> **Artículo 12.10. — Legitimación activa, corporaciones sin fines lucro.**
>
> Con el propósito de vindicar los intereses de las corporaciones sin fines de lucro frente a las actuaciones indebidas de sus directores o administradores, además de la legitimación activa que confiere el Artículo 9.13 de esta Ley al Secretario de Justicia, tendrán también legitimación activa para acudir a los Tribunales en acciones derivativas, conforme al Artículo 12.06, los miembros de dichas corporaciones.

*C.*

Nuestro ordenamiento jurídico permite que un demandado solicite la desestimación de la reclamación judicial instada en su contra cuando de las alegaciones de la demanda surja que alguna defensa afirmativa derrotará la pretensión del demandante. *Rodríguez Vázquez v. Hospital Español Auxilio Mutuo*, 2025 TSPR 55, 215 DPR ____. Es por esta razón que puede solicitarse la desestimación total de la reclamación al amparo de la Regla 10.2 de Procedimiento Civil, 32 LPRA Ap. V R. 10.2. Esto puede hacerse inclusive, antes de contestar la demanda. *Íd.* Conforme la mencionada regla, podrá solicitarse la desestimación de un pleito cuando se alegue: (1) falta de jurisdicción sobre la materia; (2) falta de jurisdicción sobre la persona; (3) insuficiencia del emplazamiento; (4) insuficiencia del diligenciamiento del emplazamiento; (5) dejar de exponer una reclamación que justifique la concesión de un remedio, y (6) dejar de acumular una parte indispensable. *Íd.*

En cuanto a la evaluación de un escrito de esta naturaleza, en innumerables ocasiones el Tribunal Supremo de Puerto Rico ha establecido que los tribunales tienen que tomar como ciertos todos los hechos bien alegados en la demanda y considerarlos de la manera más favorable a la

parte demandante. Así pues, para que una moción de desestimación pueda prosperar, tiene que demostrarse certeramente que el demandante no tiene derecho a remedio alguno bajo cualquier estado de derecho que se pueda probar en apoyo a su reclamación, aun interpretando la demanda lo más liberalmente a su favor. *Banco Popular de Puerto Rico v. Cable Media of PR, Inc.*, 2025 TSPR 1, 215 DPR ____; *Inm. Baleares et al v. Benabe et al*, 214 DPR 1109, 1128 (2024).

**-III-**

Según expresamos al exponer los hechos procesales, mediante la discusión de sus dos (2) señalamientos de error los apelantes alegan que el foro primario incidió al acoger la moción de desestimación presentada por la parte apelada. A tales efectos, en primer lugar, señalan que incidió el foro primario al no reconocer las alegadas actuaciones *ultra vires* por parte de los oficiales de la corporación en virtud de la Ley Núm. 21-1987. Esto, a pesar de que, tanto en la *Demanda,* como en los distintos escritos, señaló la conducta desplegada por estos. De otra parte, al discutir el segundo señalamiento de error, los apelantes alegan que, ante las actuaciones negligentes de los oficiales de la corporación, estos vienen obligados a responder personalmente de forma extracontractual por los daños causados a los miembros de la organización.

Los apelados por su parte afirman que el dictamen fue emitido conforme a derecho. Sostienen que en virtud de los Estatutos de G.H.S. sus facultades trascienden la obtención de un permiso de acceso controlado y lo relativo a ello. Así, señalan que allí se reconoce como parte de sus facultades y deberes, el promover aquellos servicios y hacer aquellas cosas que sean legales y permisibles para una corporación, así como promover el mejoramiento y bienestar colectivo de los residentes. De la misma forma, plantean que conformes los propios estatutos determinan, el Consejo Administrativo es quien decidirá el monto de la cuota. En virtud de esto,

alegan estar facultados para promover el mejoramiento y bienestar colectivo. Por consiguiente, las alegaciones declaradas por los apelantes no generan una acción contraria a las facultades impuestas en ley para los oficiales de G.H.S.

Nos parece que los errores señalados están íntimamente relacionados, por lo que procederemos a atenderlos de forma conjunta. Para así hacer, debemos recordar que, tal cual esbozamos en el acápite anterior, la Sección 7412 del Código Municipal requiere que, aquellas urbanizaciones adquirientes de permios para disponer de un sistema de control de acceso creen un Consejo, Junta o Asociación de Residentes. De igual forma, es pertinente considerar que, tratándose este cuerpo administrativo de una corporación sin fines de lucro, conforme también mencionamos, se regirá en virtud de Ley de Corporaciones y los estatutos de la corporación. *Martínez Maldonado v. Consejo de Seguridad y Recreación de Urbanización Villamar Este, Inc.*, supra.

Según surge de las alegaciones presentadas por los apelantes, la negligencia crasa alegada por estos por parte del Sr. Vizcarrondo y la Sra. Méndez consiste en: mantener un registro de mascotas, convocar una fiesta, manifestar preocupación por asuntos fuera del perímetro de la urbanización, aumentar la cuota de mantenimiento y convocar una reunión extraordinaria que excluyó el voto por proxy. Al evaluar estos señalamientos, puede apreciarse que las alegaciones vertidas por los apelantes no circunscriben reclamos que sustenten daños causados a la entidad, en este caso G.H.S.. Al así estimar, y conforme al derecho aplicable que arriba consignamos, no podemos si no concluir que los actos específicos de negligencia crasa imputados por los apelantes no configuran una acción deliberativa. Al final de cuentas, estos reclamos se producirán exclusivamente **de cara a la corporación y solamente si esta sufre daños**

**como consecuencia del quebrantamiento**. *Rivera Sanfeliz et al. v. Jta. Dir. First Bank*, supra.

Ante este marco, coincidimos con el foro primario. Las alegaciones de los apelantes no cumplen con el estándar de plausibilidad para la concesión de un remedio, por lo que correspondía la desestimación de la demanda en cuanto al Sr. Vizcarrondo y la Sra. Méndez. Habida cuenta de ello, el TPI no cometió los errores señalados por los apelantes. Procede confirmar la sentencia.

**-IV-**

Por los fundamentos antes expuestos, **confirmamos** la *Sentencia Parcial* apelada.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones