Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL I

| | | |
|---|---|---|
| **TERESA CLAUDIO GARCIA**<br>Parte apelada<br><br>v.<br><br>**IVÁN DÁVILA PEÑA**<br>Parte apelante | TA2025AP00181 | ***APELACIÓN***<br>procedente del Tribunal de Primera Instancia Sala Superior de **CAGUAS**<br><br>Caso Número:<br>E AC2016-0321<br><br>Sobre:<br>**DESLINDE Y AMOJONAMIENTO** |

Panel integrado por su presidente, el Juez Sánchez Ramos, la Jueza Romero García y el Juez Pérez Ocasio.

Pérez Ocasio, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 4 de noviembre de 2025.

Comparece ante nos, Edyl Dávila Oyola, en adelante, Dávila Oyola o apelante, solicitando que revisemos la sentencia emitida por el Tribunal de Primera Instancia, Sala Superior de Caguas, en adelante, TPI-Caguas, el 31 de marzo de 2025. Según este, mediante su dictamen, el Foro Apelado ordenó la demolición parcial de su propiedad, entre otras cosas.

Por las razones que expondremos a continuación, *confirmamos* la *"Sentencia"* apelada.

**I.**

El 4 de noviembre de 2016, Teresa Claudio García, en adelante, Claudio García o apelada, incoo una *"Demanda"* contra el Iván Dávila Peña, en adelante, Dávila Peña, y la esposa de este, quien murió en el año 2012.[1] En su petitorio, cuyo asunto supone una controversia sobre derechos reales, solicitó al Foro Primario que ordenara a este la demolición en parte de una casa construida, presuntamente dentro de su finca, y retire un tubo de agua que

---

[1] Apéndice del recurso, Anejo 3.

alegadamente penetra parcialmente su propiedad. En su escrito, hace parte de la demanda a Carmen Lebrón Muñoz, en adelante, Lebrón Muñoz, por ser esta parte indispensable, ya que el tubo de agua atraviesa también su propiedad. Sin embargo, especificó que no reclama nada por parte de esta.

El 4 de enero de 2017, Lebrón Muñoz, compareció ante el TPI-Caguas mediante *"Contestación a la Demanda y Demanda de Co-Parte"*.[2] En la misma, solicitó el deslinde de los predios del terrenos en cuestión, de manera que se pueda determinar si la edificación realizada por Dávila Peña se extralimitó. Peticionó, además, que de determinarse que en efecto la construcción se excedió, se ordene la demolición de la estructura extralimitada.

Por su parte, el 23 de enero de 2017, Dávila Peña radicó una *"Moción Solicitando la Desestimación de la Demanda"*, en la que adujo que el ruego de la demandante Claudio García, en esencia, consistía en una Acción Reivindicatoria.[3] Sostuvo que por esta adolecer especificaciones relativas a los linderos y cabida del inmueble, la demanda no justifica la concesión de un remedio. Además, el 27 de enero de 2017, radico su *"Contestación a Demanda Co Parte"*.[4] En ella, presentó una reconvención, en la que solicitó que el TPI-Caguas declarara su dominio sobre la propiedad, conforme a la posesión y al título que adujo poseer sobre la misma.

Más adelante, el 1 de diciembre de 2017, Dávila Peña presentó una *"Moción Informando Falta de Parte Indispensable"*.[5] Arguyó que Claudio García debía enmendar la demanda para incluir a Dávila Oyola, quien es hijo de los demandados. Este último presentó su contestación y reconvención a la demanda del 27 de enero de 2018.[6] Sin embargo, el 2 de mayo de 2018, Claudio García solicitó

---

[2] Apéndice del recurso, Anejo 6.
[3] *Id.*, Anejo 5.
[4] *Id.*, Anejo 7.
[5] *Id.*, Anejo 4.
[6] *Id.*, Anejo 9.

enmendar su petitorio, a los fines de incluir al hijo del demandado, Dávila Oyola, por entender que este pudiera tener interés en el pleito en calidad de heredero.[7]

Así las cosas, el 22 de mayo de 2018, Dávila Peña presentó su *"Contestación a Demanda Enmendada y Reconvención"*.[8] En la misma, levantó como defensa afirmativa, entre otras, falta de parte indispensable. Arguyó que aunque se añadió a Dávila Oyola, hijo de los codemandados, su esposa había muerto y no se había realizado una declaratoria de herederos que constatara que Dávila Oyola es el único heredero de esta. En escrito, arguye haber construido dentro de los límites de su propiedad, de la cual está en posesión hace más de cuarenta (40) años. Sostiene también que el tubo de agua es una servidumbre establecida por la Autoridad de Acueductos y Alcantarillados. Como parte de su reconvención, solicitó al Foro Primario que declarara el dominio de este sobre la propiedad en controversia, y declarara el tubo de agua aludido en la demanda de la apelada como una servidumbre continua y aparente.

Ahora bien, surge que el 1 de mayo de 2019, Dávila Oyola radicó un escrito intitulado *"Moción para Presentar Demanda Contra Tercera Demandada"*.[9] Aquí, reiteró el argumento de su padre, Dávila Peña, con relación a falta de parte indispensable, ya que la sucesión de su madre no era parte en el pleito. Por ello, solicitó autorización para presentar demanda contra la tercera persona de Magda Solá Oyola, en adelante, Solá Oyola, quien alega es hija de su madre. Ese día, además, presentó su *"Contestación a Demanda Enmendada y Reconvención"*,[10] mediante la cual hizo las mismas súplicas que su padre, Dávila Peña.

---

[7] Apéndice del recurso, Anejo 8.
[8] *Id.*, Anejo 9.
[9] *Id.*, Anejo 10.
[10] *Id.*, Anejo 12.

De los alegatos en los documentos que obran en autos, surge que el 13 de septiembre de 2019, Solá Oyola solicitó que se le excluyera del pleito, por haber repudiado la herencia de su madre.[11] El Foro Apelado, por lo tanto, la apartó del pleito.[12]

Por su parte, el 11 de marzo de 2020, Claudio García contestó la reconvención de Dávila Oyola.[13]

El 6 de diciembre de 2021, Dávila Peña falleció, por lo que Dávila Oyola solicitó sustituirlo en el pleito mediante moción el 28 de marzo de 2022.[14] Posterior a esto, el apelante se quedó sin representación legal. El 12 de abril de 2022 se celebró una vista de estado de los procedimientos, en la que el Foro Apelado le concedió a Dávila Oyola un término de treinta (30) días para comparecer con abogado.[15] De los escritos de las partes, y las alegaciones de las mociones con las que cuenta el expediente, surge que el apelante incumplió, y el Foro Primario anotó al rebeldía de este.[16]

No es hasta el 4 de febrero de 2023 que la actual representación legal de Dávila Oyola solicitó mediante moción la representación legal de este.[17] Además, el 3 de mayo de 2023 presentó una *"Moción Solicitando Dejar sin Efecto Anotación de Rebeldía"*.[18]

Finalmente, el 17 de octubre de 2023, las partes presentaron ante el TPI-Caguas el *"Informe Preliminar de Conferencia con Antelación a Juicio"*, en adelante, *Informe*.[19] Uno de los asuntos levantados por el apelante en el *Informe* es falta de parte indispensable. Aduce que la propiedad de la apelada fue adquirida con su fenecido esposo, y que la sucesión de este no se ha hecho

---

[11] Apéndice del recurso, Anejo 13.
[12] *Id.*, Anejo 15.
[13] *Id.*, Anejo 16.
[14] *Id.*, Anejo 17.
[15] *Id.*, Anejo 18.
[16] *Id.*, Anejo 20.
[17] *Id.*, Anejo 19.
[18] *Id.*, Anejo 20.
[19] *Id.*, Anejo 21.

parte en el caso.[20] En el mismo, la única estipulación por las partes es la titularidad de estos "en pleno dominio de los predios de terreno que cada uno ocupa".[21] Además, entre la prueba documental estipulada, se encuentran el exhibit número ocho (8), el cual consiste en la certificación con fecha del 7 de junio de 2002, que constata que Dávila Peña y su esposa compraron su parcela al Departamento de la Vivienda. Por otro lado, se estipuló el exhibit número nueve (9), el cual consiste en una Certificación del Registro de la Propiedad con fecha del 30 de abril de 2009, que demuestra que su parcela está inscrita a nombre de los demandados.[22] Surge de este *Informe* que los planos de mensura no son parte de la prueba documental estipulada.[23] De hecho, la Sección V del precitado *Informe* establece seis (6) controversias, que rezan de la siguiente manera:[24]

1. Determinar si cuando el codemandado IVAN DÁVILA PEÑA, y/o su difunta esposa, la Sra. Felícita Oyola Caraballo, construyeron su casa sobre la parcela número 39-A del plano de parcelación rural Tomás de Castro de Caguas, parte de la estructura fue edificada dentro del terreno de la demandante.

2. Determinar si la estructura construida sobre la parcela número 39-A del plano de parcelación rural Tomás de Castro de Caguas, está inscrita en el Registro de la Propiedad.

3. Determinar si existe permiso de construcción radicado en la Oficina de Permisos del Municipio Autónomo de Caguas, bajo el número de catastro 251-097-008-33-001, localizado en el Barrio Tomás de Castro I, Parcela 39-A, en Caguas, Puerto Rico.

4. Si como consecuencia de ello, la demandante tiene derecho a que el demandado proceda con la demolición de la parte de la

---

[20] Apéndice del recurso, pag. 71.
[21] *Id*, pág. 71.
[22] *Id.*, pág. 72.
[23] *Id.*, pág. 73.
[24] *Id.*, pag. 71.

estructura que fue construida dentro del terreno de la demandante.

5. Si la edificación del demandado de co parte invade en parte el predio de terreno de la co demandada Carmen Lebrón y si procede la demolición de dicha estructura.

6. Cualquier otra controversia no especificada y que sea pertinente al pleito.

Ese mismo día, el 17 de octubre de 2023, se celebró la Conferencia con Antelación al Juicio.[25] Uno de los primeros asuntos atendidos fue el planteamiento, reiterado en el *Informe* sobre falta de parte indispensable. Sobre esto, el Foro Primario indicó que se expresaría por escrito. Además, pautó la celebración del Juicio en su Fondo para los días 14, 15 y 16 de febrero de 2024.

Según lo alegado en los documentos que obran en el expediente, el Foro Primario emitió una Resolución para atender el asunto de parte indispensable. Según Claudio García y Lebrón Muñoz, el 6 de noviembre de 2023, el TPI-Caguas resolvió que no procedía la defensa de falta de parte indispensable, por no ser necesaria la sucesión del difunto esposo de la apelada para adjudicar la controversia.[26]

Sin embargo, ni el peticionario ni su representación legal comparecieron al juicio. Según los planteamientos ofrecidos al respecto, un accidente advenido sobre la representación legal del peticionario y asuntos clericales, resultaron en la incomparecencia de estos.[27]

El 14 de febrero de 2024, ante la incomparecencia de Dávila Oyola al Juicio en su Fondo, la representación de la apelada solicitó la anotación de rebeldía, a lo que el Foro Primario accedió.[28] Bajo

---

[25] Apéndice del recurso, Anejo 22.
[26] *Id.*, Anejo 28 y los escritos en oposición ante este Tribunal de Claudio García y Lebrón Muñoz.
[27] Apéndice del recurso, Anejo 26.
[28] Transcripción de la prueba oral, págs. 14-15.

juramento declaró Claudio García, Lebrón Muñoz y el perito que investigó las colindancias de los predios objetos del caso de marras, el Ingeniero Noel Mercado. Durante el testimonio de este último, se presentó una Certificación Registral, marcada como exhibit número ocho (8), fechada el 8 de febrero de 2024, en la que surge que Claudio García es la dueña registral de la propiedad que ocupa.[29]

Ahora bien, con relación al exhibit número nueve (9), la representación legal de Lebrón Muñoz indicó que se proponía presentar otra Certificación Registral para demostrar la titularidad de esta sobre su propiedad. Sin embargo, por haber sido este asunto uno estipulado por todas las partes, el Foro Apelado le concedió cinco (5) días para presentarla, a los fines de constatar la cabida que en ella surge.[30]

Concluido el desfile de prueba, el TPI-Caguas dejó sin efecto los señalamientos de continuación de Juicio para el 15 y 16 de febrero de 2024, y anotó la rebeldía del peticionario.[31] Finalmente, el 31 de marzo de 2025 el TPI-Caguas notificó su *"Sentencia"*.[32]

En su dictamen, el TPI-Caguas realizó once (11) determinaciones de hecho. Entre estas, reconoció la titularidad de las fincas ocupadas por las partes del caso, pero concluyó que la estructura construida por Dávila Peña fue realizada sin permisos, y dentro del terreno de Claudio García. Por todo lo cual, declaró *"Ha Lugar"* la Demanda de Claudio García y la Demanda de Co parte de Lebrón Muñoz. También, declaró *"No Ha Lugar"* la Reconvención de Dávila Peña, y ordenó a Dávila Oyola a demoler la estructura construida en el terreno de la apelada. Finalmente, le impuso al apelante una suma de $5,000.00 en concepto de honorarios de abogado por temeridad.

---

[29] Transcripción de la prueba oral, pág. 73.
[30] *Id.*, págs. 78-83.
[31] Apéndice del recurso, Anejo 24.
[32] SUMAC, Entrada 9, Anejo 2.

Posteriormente, el 15 de abril de 2025, Dávila Oyola presentó una *"Moción de Reconsideración"*.[33] El 5 de junio de 2025, la recurrida se opuso a esta mediante moción.[34] Finalmente, el Foro Primario declaró *"No Ha Lugar"* la solicitud de reconsideración el 25 de junio de 2025.[35] Inconforme, el 29 de julio de 2025, Dávila Oyola recurrió ante esta Curia, mediante el presente recurso, y planteó los siguientes errores:

**ERRÓ EL TPI EN LA APRECIACIÓN DE LA PRUEBA Y ABUSÓ DE SU DISCRECIÓN AL ADMITIR, Y RESOLVER EL PRESENTE PLEITO OMITIENDO LA SUSTITUCIÓN E INCLUSIÓN DE PARTE INDISPENSABLE Y NO ORDENAR LA SUSTITUCIÓN DE HEREDERO QUE REPUDIÓ LA HERENCIA POR SUS HEREDEROS SUCESIVOS.**

**ERRÓ EL TPI EN LA APRECIACIÓN DE LA PRUEBA Y ABUSÓ DE SU DISCRECIÓN AL ADMITIR, RESOLVER Y ADJUDICAR EL PRESENTE PLEITO.**

**ERRÓ EL TPI AL ADMITIR PRUEBA DOCUMENTAL NO ANUNCIADA NI OBJETO DE DESCUBRIMIENTO DE PRUEBA ESENCIAL SOMETIDA DURANTE EL JUICIO EN REBELDÍA.**

**ERRÓ EL TPI AL DETERMINAR QUE LA PARTE DEMANDANTE FUE TEMERARIA E IMPONER EL PAGO DE HONORARIOS DE ABOGADO POR TEMERIDAD EN EL PRESENTE CASO.**

Luego de evaluar el expediente, nos percatamos que el apéndice del mismo no contaba con la *"Sentencia"* apelada, objeto del presente recurso. Por ello, mediante *"Resolución"* del 20 de agosto de 2025, concedimos al apelante un término de cinco (5) días para proveer la misma. Además, instruimos a las partes sobre el proceso para presentar ante nos la prueba oral que el apelante, al amparo de la Regla 19 del Reglamento del Tribunal de Apelaciones, *In re Aprob. Enmdas. Reglamento TA,* 2025 TSPR 42, pág. 35, 215

---

[33] Apéndice del recurso, Anejo 26.
[34] *Id.*, Anejo 28.
[35] *Id.*, Anejo 29.

DPR ___ (2025), solicitó transcribir. Algunas semanas después de vencido el tiempo concedido sin que se presentara la *"Sentencia"*, emitimos otra *"Resolución"* el día 11 de septiembre de 2025, en el que le concedimos un término final a Dávila Oyola de cinco (5) días para mostrar causa por la que no debíamos desestimar su recurso.

El 17 de septiembre de 2025, el apelante radicó una moción en la que sometió la transcripción de la prueba oral. Sin embargo, no subsanó la deficiencia señalada. Por ello, emitimos otra *"Resolución"* al día siguiente, ordenado la presentación de la *"Sentencia"* apelada en o antes del 19 de septiembre a las 2:00pm. Llegado el próximo día, a las 10:29am, Dávila Oyola finalmente presentó ante esta Curia el dictamen en cuestión. Así las cosas, luego de una prórroga, la apelada radicó su *"Oposición a la Apelación"* el 22 de octubre de 2025. Perfeccionado el recurso de autos, y con el beneficio de la comparecencia de ambas partes y la transcripción de la prueba oral, procedemos a resolver.

**II.**

**A. Apelación Civil**

Las Reglas de Procedimiento Civil de Puerto Rico se desenvuelven en un orden lógico, natural y armonioso entre sí. Este orden queda demostrado en las distintas etapas de un litigio, entiéndase las alegaciones, mociones, descubrimiento de prueba, vista evidenciaria, sentencia, reconsideración, *apelación,* y sus efectos escalonados. Cada etapa se sirve de la anterior y se proyecta, entonces, para la próxima. *Vega v. Alicea*, 145 DPR 236, 238 (1998).

La etapa de la *apelación* se perfecciona con la presentación oportuna de un escrito conforme a las formalidades establecidas en nuestro estado de derecho, que incluye su debida notificación a las partes. El recurso de apelación es aquel que se presenta ante un foro de mayor jerarquía cuando se solicita la revisión de una

sentencia, o un dictamen final, emitido por el Foro de Primera Instancia. Regla 52.1 y 52.2 de Procedimiento Civil, 32 LPRA, Ap. VIII, R. 52; *Freire Ruiz et al. v. Morales, Hernández*, 2024 TSPR 129, 215 DPR ___ (2024); *González Pagán v. SLG Moret-Brunet*, 202 DPR 1062, 1070-1071 (2019). Véase, además, R. Hernández Colón, *Práctica Jurídica de Puerto Rico: Derecho Procesal Civil*, 6ta Ed., San Juan, Ed. Lexis Nexis, 2017, pág. 519.

La apelación no es un recurso discrecional como en los casos de *certiorari*. Una vez se cumpla con los requisitos jurisdiccionales y de perfeccionamiento del recurso, el Tribunal de Apelaciones viene obligado a atender el asunto y resolverlo en sus méritos, de forma fundamentada. *Soc. de Gananciales v. García Robles*, 142 DPR 241, 252 (1997). En ese sentido, se reconoce que existe el derecho estatutario para acudir en apelación ante el Tribunal de Apelaciones, cuestionando toda sentencia final emitida por el Tribunal de Primera Instancia. *Silva Barreto v. Tejada Martell*, 199 DPR 311, 317 (2017). Regla 13(A) del Reglamento del Tribunal de Apelaciones, supra, pág. 22; Art. 4.006(a) Ley de la Judicatura del Estado Libre Asociado de Puerto Rico de 2003, Ley Núm. 201-2003, 4 LPRA sec. 24y.

Al revisar una determinación de un foro de menor jerarquía, los tribunales revisores tenemos la tarea principal de auscultar si se aplicó correctamente el derecho a los hechos particulares del caso. Como regla general, los foros apelativos no tenemos facultad para sustituir las determinaciones de hechos del tribunal de instancia con nuestras propias apreciaciones. *W.M.M. P.F.M., et al. v. Colegio et al.*, 211 DPR 871, 902-903 (2023); *Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 770-771 (2013); *Serrano Muñoz v. Auxilio Mutuo*, 171 DPR 717, 741 (2007). De manera que, si la actuación del tribunal no está desprovista de base razonable, ni perjudica los

derechos sustanciales de una parte, debe prevalecer el criterio del juez de instancia a quien corresponde la dirección del proceso. *Bathia Gautier v. Gobernador*, 199 DPR 59, 182 (2017); *Sierra v. Tribunal Superior*, 81 DPR 554, 572 (1959).

### B. Apreciación de la prueba

La Regla 42.2 de Procedimiento Civil, supra, dispone en cuanto a las determinaciones de hechos basadas en *testimonio oral* que "no se dejarán sin efecto a menos que sean claramente erróneas, y se dará la debida consideración a la oportunidad que tuvo el tribunal sentenciador para juzgar la credibilidad de las personas testigos". Cónsono con la antedicha disposición reglamentaria, ha sido norma reiterada que "[e]n ausencia de error, prejuicio o parcialidad, los tribunales apelativos no intervendr[emos] con las determinaciones de hechos, con la apreciación de la prueba ni con la adjudicación de credibilidad que efectúe el Tribunal de Primera Instancia". *Ramírez Ferrer v. Conagra Foods PR*, 175 DPR 799, 811 (2009). Véase, además, *Barreto Nieves et al. v. East Coast*, 213 DPR 852, 889 (2024); *SLG Rivera-Pérez v. SLG Díaz-Doe et al.*, 207 DPR 636, 657 (2021). *Torres Vélez v. Soto Hernández*, 189 DPR 972, 990 (2013). Entretanto, precisa recordar que las decisiones judiciales están revestidas de una presunción de corrección. *Vargas v. González*, 149 DPR 859, 866 (1999).

Ahora bien, lo anterior no implica que las determinaciones del foro a *quo* no sean revisables o inmutables. Aunque respetables las determinaciones del juzgador de hechos, estas "no tienen credenciales de inmunidad frente a la función revisora de este Tribunal". *Vda. de Morales v. De Jesús Toro*, 107 DPR 826, 829 (1978). La intervención de un foro apelativo con la evaluación de la prueba testifical procederá "en casos en los que luego de un análisis integral de la prueba, nos cause una insatisfacción o intranquilidad

de conciencia tal que estremezca nuestro sentido básico de justicia". *Sucn. Rosado v. Acevedo Marrero,* 196 DPR 884, 918 (2016). Véase, además, *Rivera Menéndez v. Action Service,* 185 DPR 431, 444 (2012).

Igualmente podemos dejar sin efecto las determinaciones de hechos realizadas por el foro de primera instancia, siempre que "del examen de la totalidad de la evidencia [quedemos] definitiva y firmemente convencido[s] que un error ha sido cometido, como es el caso en que las conclusiones de hecho[s] están en conflicto con el balance más racional, justiciero y jurídico de la totalidad de la evidencia recibida". *Maryland Casualty Co. v. Quick Const. Corp.,* 90 DPR 329, 336 (1964). Recientemente, nuestro más Alto Foro expresó que "el error manifiesto ocurre cuando el foro apelativo queda convencido de que se cometió un error, a pesar de que haya evidencia que sostenga las conclusiones de hecho del tribunal, porque existe un conflicto entre las conclusiones y el balance más racional, justiciero y jurídico de la totalidad de la evidencia recibida". *Ortiz Ortiz v. Medtronic,* 209 DPR 759, 779 (2022).

Como parte de la naturaleza inherente de este foro apelativo intermedio, no celebramos juicios plenarios, ni presenciamos el testimonio oral de los testigos, ni dirimimos credibilidad, sino que contamos, de ordinario, con "récords mudos e inexpresivos". *SLG Rivera Carrasquillo v. A.A.A.,* 177 DPR 345, 356 (2009). Aunque este Tribunal no tiene la facultad de evaluar el lenguaje corporal, expresiones o demás elementos subjetivos, sí nos encontramos en la misma posición del foro primario para evaluar la prueba documental o pericial que fundamentan las determinaciones de hecho. *Sucn. Rosado v. Acevedo Marrero,* supra, pág. 918; *González Hernández v. González Hernández,* 181 DPR 746, 777 (2011). Para que proceda la revocación de un dictamen realizado por el foro

primario, la parte "apelante tiene que señalar y demostrar la base para ello". Quien "cuestione una determinación de hechos realizada por el foro primario debe señalar el error manifiesto o fundamentar la existencia de pasión, perjuicio o parcialidad". *SLG Rivera Carrasquillo v. A.A.A.*, supra, pág. 356.

### C. Deslinde y Acción Reinvindicatoria

"Entre las acciones protectoras del dominio figuran la acción reivindicatoria y la de deslinde". *Ramírez Quiñones v. Soto Padilla*, 168 DPR 142, 157 (2006). La primera de estas trata de la acción mediante la cual el propietario de una cosa la reclama de quien la tenga o la posea. *Íd.* El promovente de esta acción deberá identificar adecuadamente el objeto, evidenciar su titularidad y demostrar que el demandado está indebidamente en posesión del mismo. Véase, Artículo 280 del Código Civil de 1930, en adelante, Código Civil de 1930, 31 LPRA ant sec. 1111;[36] *Ramírez Quiñones v. Soto Padilla*, supra, pág. 157; *Pérez Cruz v. Fernández*, 101 DPR 365, 374 (1973).

"Por su parte, la acción de deslinde tiene el propósito de determinar los linderos confundidos de dos heredades contiguas". *Ramírez Quiñones v. Soto Padilla*, supra, pág. 157. Esta acción está disponible a "todos los propietarios cuyas propiedades limítrofes tienen confundidos sus linderos por causas naturales, accidentes fortuitos o actos voluntarios de tercero, debiendo concurrir todos a un juicio..." *Ramírez Quiñones v. Soto Padilla*, supra, pág. 158, citando a *Arce v. Díaz*, supra, 627-628 (1954); Artículo 319 del Código Civil de 1930, supra, ant. sec. 1211.

Una *sentencia reivindicatoria* declara el derecho dominical del demandante y ordena que el demandado le entregue la posesión del

---

[36] El 28 de noviembre de 2020, entró en vigor el nuevo Código Civil de Puerto Rico, Ley Núm. 55-2020. Sin embargo, los hechos del caso de epígrafe ocurrieron previo a la fecha de vigencia del citado estatuto, por lo que haremos referencia y esbozaremos el derecho a la luz del derogado Código.

objeto. La *sentencia de deslinde,* en cambio, tiene el único efecto de precisar las colindancias de determinados inmuebles. Dicha sentencia "no da ni quita derechos". *La O v. Rodríguez,* 28 DPR 636, 638 (1920). Véase, además, *Ramírez Quiñones v. Soto Padilla,* supra, pág. 158; *Zalduondo v. Méndez,* 74 DPR 637, 644 (1953); *Zayas v. Autoridad de Tierras,* 73 DPR 897, 901 (1952).

El deslinde se hará conforme a los títulos de cada propietario y, a falta de títulos suficientes, por lo que resultare de la posesión en que estuvieren los colindantes. Código Civil 1930, supra, ant. sec. 1212. Cuando los títulos no determinen el límite o área perteneciente a cada propietario y la cuestión no pudiera resolverse por la posesión o por otro medio de prueba, la parte de terreno que resulte sobrante en el deslinde pertenecerá al Estado Libre Asociado de Puerto Rico. Código Civil, supra, ant. sec. 1213.

### D. Parte indispensable

La Regla 16 de Procedimiento Civil, supra, regula lo relacionado a la acumulación de partes. En específico, dispone que "[l]as personas que tengan un interés común sin cuya presencia no pueda adjudicarse la controversia, se harán partes y se acumularán como demandantes o demandadas, según corresponda". (Énfasis suplido). *Oriental Bank v. Pagán Acosta y otros,* 2024 TSPR 113, 215 DPR ___ (2024); *Inmob. Baleares et al. v. Benabe et al.,* 2024 TSPR 112, 214 DPR __ (2024); *Pérez Ríos et al. v. CPE,* 213 DPR 203, 213 (2023); *FCPR v. ELA et al.,* 211 DPR 521, 530 (2023).

Una parte es indispensable cuando la controversia no puede adjudicarse sin su presencia ya que sus derechos se verían afectados. *Inmob. Baleares et al. v. Benabe et al.,* supra; *FCPR v. ELA et al.,* supra, págs. 530-531; *Rivera Marrero v. Santiago Martínez,* 203 DPR 462, 463 (2019); *López García v. López García,* 200 DPR 50, 63 (2018). La misma alude a una parte cuyo interés en la causa

de acción es de tal magnitud, que no puede dictarse un decreto final entre las otras partes sin lesionar y afectar radicalmente sus derechos. *Pérez Ríos v. et al. v. CPE*, supra, pág. 213; *López García v. López García*, supra, pág. 64; *Cirino González v. Adm. Corrección et al.*, 190 DPR 14, 46 (2014); *García Colón et al. v. Sucn. González*, 178 DPR 527, 548 (2010).

El alcance de la Regla 16.1, supra, forma parte del esquema de rango constitucional que prohíbe que una persona sea privada de su libertad o propiedad sin el debido proceso de ley y la necesidad de que el dictamen judicial que en su día se emita sea uno completo. *Oriental Bank v. Pagán Acosta y otros*, supra; *Pérez Ríos et al. v. CPE*, supra; *RPR & BJJ Ex Parte*, 207 DPR 389, 407 (2021); *López García v. López García*, supra, pág. 63. Es por esto, que, ante la ausencia de una parte indispensable, el tribunal carece de jurisdicción para resolver la controversia. *Romero v. S.L.G. Reyes*, 164 DPR 721, 733 (2005).

Por otro lado, el Tribunal Supremo de Puerto Rico ha expresado que, a la hora de determinar si la presencia de una parte es indispensable para adjudicar una controversia, se debe analizar "si el tribunal podrá hacer justicia y conceder un remedio final y completo sin afectar los intereses del ausente". *Inmob. Baleares v. Benabe et al.*, supra; *Bonilla Ramos v. Dávila Medina*, 185 DPR 667, 677 (2012). Cabe precisar que la falta de parte indispensable es un planteamiento tan vital, que se puede presentar en cualquier momento, incluyendo presentarlo por primera vez en apelación, o que el mismo se plantee motu proprio por el tribunal. *Oriental Bank v. Pagán Acosta y otros,* supra; *Pérez Ríos v. CPE*, supra, pág. 213; *RPR & BJJ Ex Parte,* supra, pág. 407.

### E. Honorarios por Temeridad

La Regla 44.1 de Procedimiento Civil, supra, faculta a los tribunales a imponer el pago de una cuantía por concepto de honorarios de abogado en casos donde cualquiera de las partes o sus abogados hayan procedido con temeridad o frivolidad. A falta de una definición de lo que constituye temeridad, el Tribunal Supremo de Puerto Rico ha dispuesto que "[l]a temeridad es una actitud que se proyecta sobre el procedimiento y que afecta el buen funcionamiento y la administración de la justicia". *Consejo Titulares v. MAPFRE*, 2024 TSPR 140, 215 DPR ___ (2025); *Jarra Corp. v. Axxis Corp.*, 155 DPR 764, 779 (2001).

La conducta que amerita la imposición de honorarios de abogado por temeridad es cualquiera que haga necesario un pleito que se pudo evitar o que ocasione gestiones evitables. *Asoc. Salud Primaria y otros v. ELA y otros*, 2025 TSPR 75, 216 DPR ___ (2025); *Martínez Maldonado v. CONSERVE*, 2024 TSPR 125, 215 DPR ___ (2024). De esta manera, en nuestro ordenamiento, los honorarios por temeridad se imponen como penalidad a un litigante perdidoso que, por su terquedad, obstinación, contumacia e insistencia en una actitud desprovista de fundamentos, obliga a la otra parte, innecesariamente, a asumir las molestias, gastos, trabajos e inconveniencias de un pleito. *Asoc. Salud Primaria y otros v. ELA y otros*, supra; *SLG González-Figueroa v. SLG et al.,* 209 DPR 138, 148-149 (2022)*; Torres Montalvo v. Gobernador ELA,* 194 DPR 760, 778 (2016). De ahí que, como regla general, establecida la concurrencia de tal conducta, la condena de honorarios resulta ser imperativa. *Martínez Maldonado v. CONSERVE*, supra.

Aunque la penalidad por temeridad de una parte no está explícitamente consignada en las Reglas de Procedimiento Civil, es a través de la imposición de honorarios de abogado, que el Tribunal ejerce esta facultad. Algunas instancias en las cuales el Tribunal

Supremo de Puerto Rico ha reconocido que una parte actúa de forma temeraria se constituyen cuando:

> (1) contesta la demanda y niega responsabilidad total pero posteriormente la acepta,
>
> (2) se defiende injustificadamente de la acción,
>
> (3) cree que la cantidad reclamada es exagerada y es la única razón que tiene para oponerse a las peticiones del demandante, y no admite su responsabilidad pudiendo limitar la controversia a la fijación de la cuantía a ser concedida,
>
> (4) se arriesga a litigar un caso del que se desprende prima facie su responsabilidad, y
>
> (5) niega un hecho que le consta es cierto a quien hace la alegación.
>
> *SLG González-Figueroa v. SLG et al.*, supra, pág. 150; *C.O.R.P. v. S.P.U.*, 181 DPR 299, 342 (2011); *Blas v. Hosp. Guadalupe*, 1146 DPR 267, 335-336 (1998); *Fernández v. San Juan Cement Co., Inc.*, 118 DPR 713, 718-719 (1987).

El juzgador tendrá que adjudicar el monto correspondiente al grado de temeridad desplegado por el actor, ello mediante el ejercicio de su sano juicio. Es por ello que, "la determinación de si se ha incurrido o no en temeridad es una tarea que recae en la discreción sana del tribunal sentenciador y solo se intervendrá con ella en casos en los que se desprenda el abuso de tal facultad". *Martínez Maldonado v. CONSERVE*, supra. Véase, además, *Consejo Titulares v. MAPFRE*, supra; *SLG González-Figueroa v. SLG et al.*, supra, pág. 150; *Maderas Tratadas v. Sun Alliance et al*, 185 DPR 880, 926 (2012); *SLG Flores–Jiménez v. Colberg*, 173 DPR 843, 866 (2008).

### III.

Dávila Oyola recurre ante nos impugnando el dictamen en rebeldía que recayó en su contra. Aduce que el TPI-Caguas erró en su apreciación de la prueba. Además sostiene que abusó de su discreción al omitir evidencia, imponer honorarios por temeridad, entre otros.

En su *primer planteamiento de error*, Dávila Oyola sostiene que el Foro Apelado se equivocó al adjudicar el pleito, faltando al mismo parte indispensable. *No le asiste la razón.*

Desde el año 2016, la parte demandada, y posteriormente el apelante en sustitución de parte, han sostenido que en el pleito de epígrafe no se han incluido partes indispensables. Huelga mencionar que durante los casi diez (10) años de litigio, se ha levantado la misma defensa, en diversas etapas y con relación a distintas personas. La primera vez que se levantó, Dávila Peña arguyó que su hijo, Dávila Oyola, debía ser parte del pleito. Luego, se planteó que faltaba la sucesión de la fenecida esposa de Dávila Peña. Finalmente, la defensa fue traída en la Conferencia con Antelación al Juicio, para argüir que se debía traer al pleito, por ser parte indispensable, la sucesión del fallecido esposo de Claudio García. Aunque no contamos con un tracto procesal completo, apreciamos de los documentos que obran en autos que el asunto nunca prosperó. De hecho, surge que el Foro Primario indicó que resolvería el ultimo planteamiento de parte indispensable por escrito. Según aducen las partes, así lo hizo mediante resolución del 6 de noviembre de 2024, rechazando definitivamente la defensa. Claudio García y Lebrón Muñoz sostienen que por estos hechos, el asunto advino final y firme, por no haberse impugnado en su momento. Aun si no tuvieran razón, lo cierto es que la defensa de parte indispensable, por la naturaleza del pleito, no podía prosperar.

Como explicáramos previamente, la defensa aludida es apropiada cuando falta en el pleito una persona sin cuya presencia no se pueda adjudicar una controversia. Esto último a razón de los derechos u obligaciones que se puedan ver afectados en virtud de la sentencia que en su día recaiga. Sin embargo, como correctamente dispuso el TPI-Caguas en su *"Sentencia"*, el Foro Apelado se encontraba ante una controversia sobre deslinde y acción

reivindicatoria. Nuestro Tribunal Supremo ha expresado que estas acciones no otorgan ni quitan derechos. Más bien, son mecanismos judiciales con el fin de proteger el ejercicio del dominio. Una breve lectura de la Demanda radicada hace casi nueve (9) años pone en relieve esta realidad. Claudio García solicitó remedio del Foro Primario por entender que el apelante se encontraba poseyendo indebidamente parte de su propiedad. Para realizar este análisis, fue necesario realizar un deslinde en las propiedad adyacentes. Estas causas de acción no otorgan derechos, sino que los declaran. Es decir, en el caso de autos, el ejercicio de realizar un deslinde solo reveló la existente titularidad de las parte sobre su propiedad, y el alcance de estas. Así, el TPI-Caguas pudo determinar si la acción reivindicatoria procedía contra los codemandados. Por cuanto la adjudicación del caso de marras no afectó los derechos reales de las partes, no procedía ninguno de los argumentos presentados a través del litigio sobre parte indispensable.

En su *segundo y tercer señalamiento de error*, los cuales discutiremos en conjunto, el apelante alega que el Foro Apelado abusó de su discreción al admitir prueba documental que no fue objeto del descubrimiento de prueba. *No le asiste la razón.*

Sabido es que el ejercicio revisor de este Tribunal sobre un dictamen emitido por el Foro Sentenciador le merece una presunción de corrección, y una responsabilidad inclinada a la deferencia judicial. Estas ceden cuando la parte que recurra ante nos logre demostrar que la determinación apelada adolece de perjuicio, error manifiesto o sea producto del abuso de discreción. Luego de una detenida, exhaustiva y sobria evaluación de los escritos, el expediente y la prueba oral, justipreciamos que el TPI-Caguas *no abusó de su discreción.*

Dávila Oyola sostiene que los exhibit número ocho (8) y nueve (9) no debieron desfilar ni admitirse en el juicio. En síntesis, alega

que estos documentos no fueron objeto del descubrimiento de prueba. Con relación al exhibit ocho (8), el apelante señala que la fecha de ese documento correspondía a unos días previos al juicio, lo que evidenciaba su inadmisibilidad por no haberse descubierto previamente. Nos alerta, además, que la irresponsabilidad del Foro Primario fue tal, que admitió como exhibit una prueba que no se encontraba en Sala, y tuvo que ser presentada mediante moción en un día posterior. Sin embargo, luego de leer la transcripción de la prueba oral, concluimos que estos señalamientos de error son un calamitoso esfuerzo de inducirnos a error.

Resulta menester destacar, primeramente, que en el Informe todas las partes estipularon la titularidad de sus respectivas propiedades. Para establecer esto en el juicio, Claudio García presentó una Certificación Registral que establecía que ella es la dueña registral de su parcela. A esos efectos, durante el testimonio del Ingeniero Noel Mercado, surgió el siguiente intercambio entre la representación legal de la apelada y la Magistrada:[37]

> Abogado: Lo único que nos faltaría, su señoría, para **demostrar la titularidad de la... de que esa propiedad al día de hoy todavía le pertenece a la señora Teresa Claudio**, es un estu... es un título que según el Informe Conferencia con Antelación al Juicio, este... está marcado con el número 11 **estipulado con la condición de que fuera actualizado. Se actualizó al 8 de febrero de 2024. Este... aquí vamos a someterlo entonces, está estipulado, o sea, y actualizado.**
> [...]
> Juez: "Okay". Pues entonces lo que fue anunciado como el Exhibit conjunto número 11 en el Informe de Conferencia se marca y se admite como Exhibit conjunto número 8, pero hacemos la aclaración que se trata de una Certificación Registral...
> Abogado: Exacto, sí.
> Juez: ...con fecha de 8 de febrero de 2024, a solicitud del licenciado Portela Martínez, sobre finca número 45,472 y de

---

[37] Transcripción de la prueba oral, pags. 72-74.

la misma surge inscrita a favor de Teresa Claudio y su esposo Miguel Ángel Caraballo, quienes adquieren por donación, según se ha establecido anteriormente y aparece libre de cargas y gravámenes. Se marca entonces como Exhibit conjunto número 8. ¿8? Mire a ver, ¿o estoy mal yo? 6, 7... Sí, el 7 fue la Escritura de donación y 8 debe ser este.

La evidencia testifical, escuchada y creída por el Foro Primario, surge que este exhibit tenía la intención de evidenciar lo que ya estaba estipulado por todas las partes. Además, la representación legal de la apelada ofreció una explicación en Sala sobre la fecha de esta Certificación Registral. Indicó que la titularidad que surge de este documento quedó estipulada con la condición de que el mismo se actualizara, para demostrar que al momento del juicio, la apelada seguía siendo la dueña registral de la propiedad que busca reivindicar. Con relación al exhibit número nueve (9), el mismo trata de la Escritura de Compraventa mediante la cual Lebrón Muñoz adquirió su parcela. Este fue el intercambio entre la representación legal de Lebrón Muñoz y la Magistrada:[38]

> Juez: ¿La licenciada interesa presentar la escritura mediante la cual compró doña Carmen, que está como Exhibit conjunto número 12 en el Informe?
>
> Abogada: La realidad es que lo habíamos estipulado.
>
> Juez: "Okay". ***Está estipulada la titularidad.***
>
> Abogada: O sea, las titularidades de todos los, verdad, las partes en el caso.
>
> Juez: Pero si la tiene la pudiéramos marcar para tener la cabida que surja de ahí.
>
> Abogada: Sí, déjeme ver si la... si la...
>
> Juez: Por... por la... en la eventualidad, como... como estamos hablando también de las cabidas y...
>
> Abogada: Exacto.

Sin embargo, momentos después, la representación legal de Lebrón Muñoz se percató que no tenía el documento físicamente:[39]

> Abogada: Vuestro honor, estamos revisando los documentos y al parecer en una de las veces que hemos sacado y entrado

---

[38] Transcripción de la prueba oral, pág. 79.
[39] *Id.*, págs. 81-82.

> los documentos del expediente no tenemos la escritura aquí ahora mismo, pero si nos concede un término de tres a cinco días que le podamos presentar la copia de la escritura, verdad, porque pues como no hay controversia en cuanto a la titularidad, que sería para efectos....
>
> [...]
>
> Abogada: De hecho, fue estipulado en el número 12 del Informe.
>
> Juez: Sí, correcto.
>
> Abogada: O sea, que...
>
> Juez: ***Como es un documento estipulado, además es una escritura pública, es un documento auténtico***...
>
> Abogada: Ujú.
>
> Juez: ...de su faz purd (sic) tenga el término de cinco días...
>
> Abogada: "Okay".

En efecto, en el *Informe* surge que el exhibit número doce (12), estipulado por todas las partes, fue la Escritura de Compraventa de Lebrón Muñoz. A consecución, rechazamos la contención del apelante sobre la admisibilidad de estos documentos. Los mismos fueron presentados y admitidos con el único propósito de constatar la titularidad de la apelada y de la codemandada sobre sus parcelas, asunto que fue estipulado por Dávila Oyola. Por todo lo cual, resulta improcedente impugnar ante esta Curia los mismos, cuando su contenido – y en el caso del exhibit número 9, el documento mismo – fue estipulado en el *Informe* por el apelante.

En su *cuarto y último señalamiento de error*, Dávila Oyola alega que el Foro Primario erró al imponer honorarios de abogado por temeridad. Lo cierto es que la imposición de honorarios, en virtud de esta causa, es un asunto discrecional del Foro Apelado. Para revocarlos, el apelante debe colocar a este Tribunal en posición de determinar la improcedencia, irracionabilidad o el abuso discrecional de estos. El apelante no lo hizo. *No le asiste la razón.*

Como vimos, la temeridad de una parte es el resultado de una actitud contumaz, que resulta en la prolongación innecesaria de un pleito. Lo cierto es que, en el caso de marras, la parte demandada y

ahora apelante ha demostrado una actitud de descuido que ha provocado que el caso casi alcance una década de vida en los tribunales. Veamos. En sus primeras comparecencias al Foro Primario, Dávila Peña, y ahora Dávila Oyola, han levantado en múltiples ocasiones y de manera infructuosa, la defensa de parte indispensable. Han intentado argüir el asunto en múltiples etapas del proceso, y han cambiado en tres (3) ocasiones el sujeto de la alegada parte indispensable. Es nuestra apreciación que han variado el argumento, de manera contumaz, buscando atinar con alguno el argumento de parte indispensable.

Por otro lado, durante estos años, se le ha anotado la rebeldía al apelante en dos (2) ocasiones. Lo que obra en el expediente como tracto procesal, aunque incompleto, es suficiente para denotar la dejadez del apelante ante los señalamientos del Foro Primario. Sin necesidad de entrar en la penuria de las alegaciones de la representación legal, con respecto a la segunda anotación de rebeldía, lo esbozado resulta idóneo para concluir que el Foro Apelado no se equivocó ni abusó de su discreción al imponer los honorarios de abogado por temeridad.

**IV.**

Por lo antes expuesto, *confirmamos el dictamen apelado en su totalidad.*

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones